**ALASKA AIRLINES, INC., Timothy R. Metcalf, Plaintiffs–Appellants,**

v.

**OREGON BUREAU OF LABOR; Mary Wendy Roberts, Commissioner, Defendants–Appellees.**

No. 95–35335.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1996.

Decided Aug. 14, 1997.

Calvin L. Keith, Perkins Coie, Portland, OR, for Plaintiffs–Appellants.

Richard D. Wasserman, Assistant Attorney General, Salem, OR, for Defendants–Appellees.

Before: CANBY, RYMER and KLEINFELD, Circuit Judges.

CANBY, Circuit Judge:

The question on appeal is whether the arrangement by which Alaska Airlines, Inc., pays its employees for sick leave is subject to the federal Employee Retirement Income Security Act ("ERISA"). If it is not, then Oregon may apply its parental leave laws to require Alaska Airlines to permit employees to utilize sick leave for family leave purposes, such as care of sick children. We conclude that ERISA does not apply to Alaska Airlines' sick leave payment system, and that Oregon may apply its law.

## BACKGROUND

ERISA regulates "employee welfare benefit plans," which include plans that provide employees "benefits in the event of sickness." 29 U.S.C. § 1002(1). ERISA also broadly preempts state laws relating to any employee benefit plan. 29 U.S.C. § 1144(a). A regulation of the Secretary of Labor, however, excludes certain "payroll practices" from the application of ERISA. It provides that an "employee benefit welfare plan" shall not include:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons. . . .

29 C.F.R. § 2510.3–1(b)(2). The legal question before us is whether Alaska Airlines' sick leave payment system is an ERISA-regulated plan, or an excepted payroll practice.

Alaska Airlines employees are entitled to certain amounts of sick leave under their labor agreements. Alaska Airlines established a Welfare Plan for the payment of sick leave and other employee benefits. It created a trust to administer the Plan's payments. The trustees are Alaska Airlines employees.

Alaska Airlines desired, however, to pay sick leave in the same check in which the employee received his or her regular pay. It therefore entered into a repayment agreement with the trust under which the airline became the Welfare Plan's agent "for the limited purpose of paying the Plan Benefits directly to the Participants at the same time and in the same manner as [Alaska Airlines] pays its obligations as they become due." Therefore, under the repayment agreement, the airline's employees do not receive their benefit payments directly from the trust. Instead, Alaska Airlines pays the benefits directly to employees from its general funds, and then seeks reimbursement from the trust. Thus sick leave pay is paid at the employee's regular rate of compensation in the pay check for the period when the leave is taken.

At the end of each fiscal year, Alaska Airlines partially "prefunds" the trust, to the extent that the IRS allows, in order to shift tax deductions from one year to the next. The airline also periodically transfers money to the trust throughout the year. The airline then immediately begins removing that money on a monthly basis as reimbursement for the employee benefits that the airline pays. For example, in September 1994, the airline put approximately $7.5 million into the trust in an attempt to prefund benefit payments for the next three months. The airline then sought reimbursement from the trust for approximately $3.1 million that month. The trust's monthly balance therefore fluctuates greatly, but over time does not tend to increase. The airline's payments from its general assets for employee benefits have at times exceeded the trust fund's balance, and the fund sometimes contains less than $1,000.

Two Alaska Airlines employees in Oregon sought to utilize accrued sick leave time during their parental leave terms. Alaska Airlines does not permit this use of sick time; the airline allows employees to use sick leave only for their own illnesses. When the employees were denied use of their sick leave, they filed complaints with the Oregon Bureau of Labor and Industries ("BOLI"). The employees contended that Oregon's parental leave laws compel the airline to allow its employees to use accrued sick leave during periods of parental leave.

In August 1994, BOLI issued cease and desist orders that required Alaska Airlines to allow its employees to use accrued sick leave time during parental leave. The airline in turn filed this action against BOLI and its Commissioner in the United States District Court for the District of Oregon, seeking declaratory and injunctive relief from enforcement of Oregon's law.[1] The airline contended that ERISA governs the Welfare Plan and preempts any application of the Oregon Parental Leave Act. The district court granted summary judgment in BOLI's favor, concluding that ERISA did not apply because the airline's sick leave payments constituted an exempted "payroll practice." Alaska Airlines appealed.

## ANALYSIS

The argument of Alaska Airlines is not complicated.[2] It has established a "fund" (the trust) for payment of "benefits in the event of sickness," as described in ERISA.

---

1. In its complaint, Alaska Airlines sought declaratory and injunctive relief from certain provisions of the Oregon Parental Leave Act, Or.Rev. Stat. § 659.360. The district court's final order, dated March 1995, also refers to that act. The Oregon Legislature, however, repealed the Oregon Parental Leave Act effective July 1995, and replaced it with the Oregon Family Leave Act, Or.Rev.Stat. ch. 580 §§ 1–17. We find no substantive change between the two acts in terms of employees' use of sick leave time for parental leave, which is the relevant issue here. The parties have not suggested that there is any difference between the two statutes that would affect this appeal. We therefore conclude that the replacement of the Oregon Parental Leave Act by the Oregon Family Leave Act does not render this appeal moot.

2. We review de novo a district court's grant of summary judgment. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996).

29 U.S.C. § 1002(1). Thus, the airline asserts, its sick leave payments as agent for the fund must be covered by ERISA.

But we must focus on the actual methods of payment. The Secretary has exempted certain payments as "payroll practices," and the airline does not contest the validity of the regulation. If the payments made by Alaska Airlines fall within the regulation, then they are not governed by ERISA. The payment of sick leave benefits is a payroll practice if it is

> [p]ayment of an employee's *normal compensation, out of the employer's general assets,* on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons....

29 C.F.R. § 2510.3–1(b)(2) (1995) (emphasis added). We conclude that Alaska Airlines' payments fit this description.

There is no doubt that the sick leave payments, which arrive in the same check as the employee's regular pay and compensate for sick days at the same rate as days worked, are payments of the employee's "normal compensation" for sick time. On this record, we also conclude that the payments are made "out of the employer's general assets." Alaska Airlines pays the employee directly, and it draws from its general assets to do so. It is not transmitting funds the trust has given it to pay the employee. It is paying first, and seeking reimbursement later. Its payment, from general assets, qualifies as a payroll practice under the plain words of the regulation.

The airline argues that this conclusion puts form over substance, and deprives the airline and its employees of ERISA coverage simply because, for convenience, the airline advances the funds for the trust. But the substance of the airline's procedure is not necessarily one of a funded benefit program. There is no clear relation between the amount of funds in the trust and the sick leave liability accrued by the airline's employees. When, as is sometimes the case, the trust's assets are as low as $1,000, the airline is free to advance many times that amount in sick leave payments. It can then make a large "payment" to the trust which in turn is offset by its "reimbursement," with a net cash flow of zero into or out of the trust. Under this scenario, the employee is relying on the financial health of Alaska Airlines, not that of the trust, for his or her regular sick leave payments. "If there is a danger of defeated expectations, it is no different from the danger of defeated expectations of wages for services performed-a danger Congress chose not to regulate in ERISA." *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1672, 104 L.Ed.2d 98 (1989).

It is true that in *Morash,* the Court was dealing with vacation benefit payments paid at the end of employment by the employer, with no fund or trust having been set up. The Court held that such payments were exempted "payroll practices" and not ERISA plan payments, even if the vacation benefits had cumulated over time. *Morash,* 490 U.S. at 116, 109 S.Ct. at 1673; *see also Shea v. Wells Armored Serv. Corp.,* 810 F.2d 372 (2d Cir.1987).

The Court in *Morash* also observed that "the creation of a *separate fund to pay employees vacations benefits*" would be subject to ERISA, *Morash,* 490 U.S. at 114, 109 S.Ct. at 1672 (emphasis added), but the point here is that under Alaska Airlines' system, the employee is not paid by the fund and the fund is not maintained in a manner designed to protect employee sick pay benefits. The employee is paid by Alaska Airlines, and the payment falls exactly within the terms of the Secretary's payroll practices regulation. Applying the regulation literally to Alaska Airlines does not defeat the purposes of ERISA, because Alaska's system has more of the characteristics of an unfunded payment than of an ERISA trust fund payment. Under the repayment agreement, the airline's employees would still receive their benefits if the trust fund were mismanaged or held no assets, but they might not receive their benefits if the airline itself became insolvent. They depend on their employer for sick pay in the same way that they depend on it for wages. The risk of non-payment in those circumstances was viewed by *Morash* as lying beyond the purpose of ERISA. *See Morash,* 490 U.S. at 115–16, 109 S.Ct. at

1672–73; *see also California Hospital Assoc. v. Henning,* 770 F.2d 856, 860–61 (9th Cir. 1985).

The airline also argues that literal application of the Secretary's regulation in this case defeats the purpose of ERISA to provide a uniform system of regulation for employees and employers without regard to state lines. Regulation of sick pay, however, is no less a traditional state function than was the regulation of vacation pay considered in *Morash.* There the Court observed that extensive state regulation actually afforded more protection of vacation benefits than ERISA, and it was reluctant to cause their preemption when Congress did not clearly require it. *Morash,* 490 U.S. at 119, 109 S.Ct. at 1674. So, too, in this case. The Secretary's regulation applies in terms, which means that ERISA does not. No policy underlying ERISA or the regulation supports a deviation from the plain terms of the exemption. We therefore apply it here.

Our decision is congruent with the only other case to have addressed the precise issue that we face here. *See Czechowski v. Tandy Corp.,* 731 F.Supp. 406, 408 (N.D.Cal. 1990). In *Czechowski,* the district court held that an arrangement where an employer made benefit payments from its general assets as an agent of a separate trust was not subject to ERISA because the employees did not face a risk of non-payment from mismanagement of the separate fund. *Id.* We recognize that the fund in *Czechowski* never contained more than $1,000 and that the Alaska Airlines trust fund at times contained millions of dollars. *See id.* In both cases, however, the trust funds held assets only briefly, without consistent relation to accruing liability for benefits, and for the purpose of reimbursing the employer for payments made. *See id.* In both cases the degree of risk to the employees depended on the financial health of the employer, not the fund. *See id.*

---

**3.** Because we conclude that the Alaska Airlines' sick leave payment system is not subject to ERISA, we do not reach the questions whether ERISA preempts Oregon's parental leave laws,

## CONCLUSION

We conclude that the Alaska Airlines Welfare Plan is not subject to ERISA because the airline's payments of sick leave to it employees constitutes an exempted "payroll practice." We therefore affirm the district court's summary judgment in BOLI's favor.[3]

**AFFIRMED.**

or whether any such preemption is affected by the Family and Medical Leave Act, 29 U.S.C. § 2651(b).