**PROVIDENCE HEALTH SYSTEM-WASHINGTON, dba-Providence Yakima Medical Center, dba Providence Yakima Medical Center Skilled Nursing Facility; Providence Yakima Medical Center; Providence Yakima Medical Center Skilled Nursing Facility, Plaintiffs–Appellees,**

v.

**Tommy G. THOMPSON, Secretary Department of Health and Human Services, Defendant–Appellant.**

No. 02–35912.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2003.

Filed Dec. 17, 2003.

Robert D. McCallum, Jr., Assistant Attorney General, for the defendant-appellant.

James A. McDevitt, United States Attorney, for the defendant-appellant.

Barbara C. Biddle, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, Washington D.C., for the defendant-appellant.

Anthony A. Yang, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, Washington D.C., for the defendant-appellant.

Stephen I. Pentz, Bennett Bigelow & Leedom, P.S., Seattle, Washington, for the plaintiff-appellee.

Before: D.W. NELSON, KOZINSKI, and McKEOWN, Circuit Judges.

## OPINION

D.W. NELSON, Senior Circuit Judge:

The Secretary of Health and Human Services (Secretary) appeals the district court's reversal of the Secretary's decision to deny Providence Health System–Washington (Providence) a "new provider" exemption under 42 C.F.R. § 413.30(e) (1996). We hold that 42 C.F.R. § 413.30(e) is ambiguous. Because the Secretary's interpretation that Providence is not entitled to a new provider exemption due to its acquisition of pre-existing bed rights from Summitview Manor (Summitview) is reasonable, it is therefore entitled to deference. Consequently, we reverse the decision of the district court and direct entry of summary judgment in favor of the Secretary.

## I. Factual and Procedural Background

Providence opened as a Medicare-certified skilled nursing facility (SNF) in Yakima, Washington in May 1993. Washington, like many other states, has developed a fairly elaborate methodology for regulating the number of its nursing home beds. See Wash. Admin. Code §§ 246–310–350 to 246–310–390 (1992). Under this scheme, Washington closely monitors geographical planning areas in the state in order to determine which areas are "under-bedded" or "over-bedded," relative to the need for medical services. In certain areas, "no [new] beds can be added" until a statutory formula is satisfied. See id. § 246–310–380(3). Washington also requires Certificate of Need (CON) approval before an entity can perform various health care activities, including the "construction, development, or other establishment of a new health care facility." Id. § 246–310–17679 020(1)(a). Washington law licenses new nursing facility beds only upon issuance of a CON. Previously approved CON nursing facility beds, however, can be purchased or transferred from an existing or closed nursing facility in order to help establish a new facility. In 1990, Providence purchased the rights to operate its twelve beds from an existing nursing facility, Summitview. This transfer of bed rights allowed Providence to obtain a CON, and is the only connection between Providence and Summitview.

Providence's operations were regulated not only by Washington law, but also by the highly technical Medicare program. The Medicare Act, 42 U.S.C. §§ 1395–1395ggg (1996), provides federal funding for various medical services for the elderly and disabled. For the years in question here, it also provides reimbursement for the reasonable costs of certain services provided by SNFs. See id. § 1395f(b)(1); 42 C.F.R. § 413.1(a)(2)(ii), (b), (g).[1] Rou-

---

**1.** Providence sought Medicare reimbursement for the cost-reporting years 1993–1996. For

tine service cost limitations (RCLs) are imposed on reimbursement, however, for non-capital per diem costs of patient care. For SNFs, the RCLs are 112% of the industry average of such costs. 42 U.S.C. § 1395yy(a). SNFs that qualify as "new providers," however, can obtain an exemption from the RCLs—and thus obtain full reimbursement—for their first three years of operation. 42 C.F.R. § 413.30(e).[2]

In June 1996, Providence applied for cost exemptions from the Health Care Financing Administration (HCFA), the Department of Health and Human Services (HHS) agency that administered Medicare.[3] HCFA denied the exemption. Providence then appealed to the Provider Reimbursement Review Board (PRRB), which affirmed the denial of Providence's exemption request in a unanimous opinion on May 16, 2001. The PRRB determined that Providence was not a new provider as it had "purchased and relocated the operating rights to 12 existing and operational beds from Summitview, and that the transaction was effected by means of a [change of ownership] as set forth under HCFA Pub. 15–1 § 1500.7 and further clarified by the provisions in HCFA Pub. 15–1 § 2533.1." *Providence Yakima Med. Ctr. v. Blue Cross and Blue Shield Ass'n*, PRRB Hrg. Dec. No.2001–D32, at 18 (May 16, 2001). The PRRB also determined that Summitview had provided skilled nursing services to its patients in the three years prior to the sale of its bed rights. *Id.* at 19. Therefore, the PRRB concluded that Providence was not a new provider both because a change of ownership (CHOW) had occurred—indicating previous ownership—and because Summitview

had provided skilled nursing services in the three-year look-back period of 42 C.F.R. § 413.30(e).

After the HCFA Administrator declined to review the PRRB's decision, Providence sought judicial review in the district court. The district court denied the Secretary's motion for summary judgment and granted summary judgment to Providence sua sponte. It reversed the Secretary's decision, found that the "new provider" exemption unambiguously applied to Providence, and declined to defer to either the Secretary's interpretation of 42 C.F.R. § 413.30(e) or the Secretary's policy rationale for that interpretation.

## II. Standard of Review

The district court's grant of summary judgment is reviewed de novo. *Webster v. Pub. Sch. Employees of Wash. Inc.*, 247 F.3d 910, 913 (9th Cir.2001). Neither party argues that there are disputed factual issues. Rather, this Court must determine "whether the district court correctly applied the relevant substantive law." *Id.* The district court's interpretation of federal regulations is reviewed de novo. *Id.* at 914–15.

■ Under the Administrative Procedure Act, an agency decision may be reversed if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[A]n agency's interpretation of its own regulations" is entitled to "substantial deference." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114

---

cost-reporting years beginning on or after July 1, 1998, SNFs are no longer reimbursed on a reasonable cost basis and, instead, are reimbursed under a "prospective payment" system. *See* 42 U.S.C. § 1395yy(e)(1), (e)(2)(D)-(E); 42 C.F.R. § 413.1(g)(2)(i).

**2.** The new provider exemption can now be found at 42 C.F.R. § 413.30(d).

**3.** The HCFA is now known as the Centers for Medicare and Medicaid Services.

S.Ct. 2381, 129 L.Ed.2d 405 (1994). There-fore,

> the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.... This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program [Medicare], in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.

*Id.* (citations and internal quotation marks omitted). In other words, if "the meaning of [regulatory] language is not free from doubt"—i.e., is ambiguous—"the reviewing court should give effect to the agency's interpretation so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 150–51 (1991) (citations and internal quotation marks omitted).

### III. Discussion

#### A. *42 C.F.R. § 413.30(e) Is Ambiguous*

■ The critical question here is whether that characteristic of Providence's operations that makes it a provider—the provision of inpatient services—can be said to have been previously owned by Summitview. 42 C.F.R. § 413.30(e) defines "new provider" in the context of the relevant exemption: "A new provider is a provider of inpatient services that has operated as the type of provider (or the equivalent) for which it is certified for Medicare, under present and previous ownership, for less than three full years." 42 C.F.R. § 413.30(e). We hold that the plain language of 42 C.F.R. § 413.30(e) does not clearly address whether Summitview's ownership of the bed rights it transferred to Providence constitutes previous ownership.

Providence quotes extensively from *Ashtabula County Medical Center v. Thompson,* 191 F.Supp.2d 884(N.D. Ohio 2002), in support of its argument that 42 C.F.R. § 413.30(e) is unambiguous. The court in *Ashtabula* held that the term " 'provider' is unambiguous and must refer to an institution (or distinct part of an institution), not merely to a characteristic or attribute of such an institution." *Id.,* 191 F.Supp.2d at 893. The district court also relied heavily on *Ashtabula*'s logic. The statutory definition of "provider" includes a "skilled nursing facility," 42 U.S.C. 1395x(u), which in turn is defined as "an institution (or a distinct part of an institution) which ... is primarily engaged in providing ... skilled nursing care." 42 U.S.C. 1395i–3(a). However, simply equating "provider" with "institution," or a "distinct part of an institution," does not remove the ambiguity from the face of the regulation.

Rather, we are persuaded by *Paragon Health Network v.Thompson,* 251 F.3d 1141 (7th Cir.2001), and *South Shore Hospital, Inc. v. Thompson,* 308 F.3d 91 (1st Cir.2002), and hold that the interplay of "provider" and "previous ownership" renders the regulation inherently ambiguous as to the critical question at issue in this case. As the Seventh Circuit explained in *Paragon,* there is no commonly understood set of attributes that defines a provider. *See Paragon,* 251 F.3d at 1148. Agreeing with *Paragon,* the First Circuit concluded that the regulation's ambiguity "hinge[d] on the meaning of 'previous ownership.' " *South Shore,* 308 F.3d at 98. The First Circuit further reasoned that "the terms 'provider' and 'institution' are central to an understanding of the exemption, and those terms subsume any number of components, changes in one or all of which

might, depending on the context, lead one to deduce that a new provider has (or has not) been created." *Id.*

Here, Providence's attempt to cast 42 C.F.R. § 413.30(e) as unambiguous must fail. One could, and the Secretary does, argue that the provision of services is impossible without bed rights, and because Summitview provided similar services when it owned the bed rights, Summitview previously owned the essential characteristic of providership that Providence now possesses. One could also argue that Providence is a different facility than Summitview, that numerous elements in addition to bed rights are necessary to provide skilled nursing services, and that Providence's essential providership was never previously owned by Summitview because none of these additional elements of Providence's SNF was previously owned by Summitview. Neither interpretation is plainly foreclosed by the regulation. Because "the regulation is not drawn in blacks and whites but leaves significant gray areas unresolved, it is ambiguous." *Id.*

### B. *The Secretary's Interpretation Was Reasonable*

#### i. *A Change of Ownership*

█ Because the language of 42 C.F.R. § 413.30(e) is vague, we must defer to the Secretary's reasonable interpretation. *See Thomas Jefferson*, 512 U.S. at 512, 114 S.Ct. 2381. The Secretary chose to narrow its determination of Providence's previous ownership to the question of whether the bed rights were previously owned by another SNF or the equivalent of an SNF. This focus on bed rights derives from the Secretary's position that a provider may merely be a collection of segregable assets used to render a specific type of care within an institution. We hold that it was not unreasonable for the Secretary to fo-

cus on bed rights, as bed rights are an essential characteristic of providership.

In turn, the Secretary determined that the sale of the bed rights qualified as a CHOW as reflected in its Provider Reimbursement Manual (PRM). PRM–1 § 1500.7 states that a CHOW will occur upon the "[d]isposition of all or some portion of a provider's facility or assets (used to render patient care) through sale ... if the disposition affects licensure or certification of the provider entity." PRM–1 § 1500.7 (1985). We hold that the Secretary's application of PRM–1 § 1500.7 to Providence's transaction was a reasonable application of its power to interpret its own regulations.

Providence argues against the application of PRM–1 § 1500.7 on two grounds. First, it states that the only transferred assets were the "intangible" bed rights and that PRM–1 § 1500.7 does not countenance this type of disposition. But "the Secretary, through HCFA, historically has defined change of ownership differently in different contexts, and we see no reason why the Secretary, in the exercise of his broad authority to interpret regulations that he himself has promulgated, cannot choose to apply section 1500.7's dilucidation in this context...." *South Shore*, 308 F.3d at 99. Second, Providence argues that because Summitview is still in existence, Summitview's licensure was not affected. But that position is not supported by the language of PRM–1 § 1500.7. The sale *affected* Summitview's licensure because it reduced the number of Summitview's licensed beds. Providence's attempts to foreclose the application of PRM–1 § 1500.7 fail to take into account that a Medicare CHOW is "a term of art," the "interpretation of [which] lies peculiarly within the compass of the Secretary's expertise." *Id.* at 100.

Providence additionally contends that the PRRB's mention of PRM–1 § 2533.1(E)(1)(b) (1997) was an impermissibly retroactive application of this guideline, which was published in September of 1997, more than a year after Providence submitted its application for new provider status. PRM–1 § 2533.1(E)(1)(b) links CHOWs, including the purchase of the right to operate long-term care beds from a pre-existing facility, to determinations of previous ownership under 42 C.F.R. § 413.30(e).

█ Providence fails to appreciate that PRM–1 § 2533.1(E)(1)(b) incorporated existing policy, and overlooks the fact that the PRRB did not hinge its determination solely on PRM–1 § 2533.1(E)(1)(b). First, the PRM provides interpretative advice; it does not constitute legally binding authority. *Phoenix Baptist Hosp. & Med. Ctr. v. Heckler*, 767 F.2d 1304, 1307 (9th Cir.1985). PRM–1 § 2533 was specifically intended to "integrate[ ] existing policy found in §§ 1500 and 2414.3 to aid providers in understanding what constitutes a change of ownership (CHOW)." HCFA Pub. 15–1, Rev. 400 (09–97). The PRRB was free here to apply the standard in PRM–1 § 2533.1(E)(1)(b) to Providence, even in the absence of the guideline's promulgation, because this interpretative guideline "merely stated [the Secretary's] reading of the old regulations." *Health Ins. Ass'n of Am. Inc. v. Shalala*, 23 F.3d 412, 424 (D.C.Cir.1994); *see also Sentara–Hampton Gen. Hosp. v. Sullivan*, 980 F.2d 749, 759–60 (D.C.Cir.1992). Any possible "retroactive effect was completely subsumed in the permissible retroactivity of the agency adjudication." *Health Ins. Ass'n of Am.*, 23 F.3d at 424. Second, the PRRB determined that the transaction was a CHOW as set forth under PRM–1

§ 1500.7 "and *further clarified* by the provisions in [PRM–1] § 2533.1." PRRB Hrg. Dec. No.2001–D32 at 18 (emphasis added). PRM–1 § 2533.1, although briefly mentioned, was not necessary to the PRRB's decision.

ii. *A Narrow Construction of 42 C.F.R. § 413.30(e)*

The PRRB's decision to deny Providence new provider status is also reasonable in light of the policy concerns that drive the exemption of 42 C.F.R. § 413.30(e). The Secretary's narrow construction of the exemption is supported both by Washington's de facto moratorium on new nursing facility beds, and the policy of preventing initial underutilization that undergirds 42 C.F.R. § 413.30(e). 44 Fed.Reg. 31,802 (June 1, 1979).

Washington, along with other states, has decided to impose what amounts to a de facto moratorium on nursing beds. These limits reduce the number of new facilities, and ultimately reduce competition. In these moratorium states the Secretary has reasonably decided that no additional benefit is gained in the overall delivery of health care services when beds are merely shifted from one provider to another.[4] The Secretary has determined that an exemption that would reimburse higher costs resulting from such a transfer of bed rights would improperly reimburse costs that are not necessary to the efficient delivery of health services. *See Paragon*, 251 F.3d at 1149–50. Because providers in moratorium states will tend to suffer less from the effects of competition and any initial underutilization, the Secretary has reasonably determined that they have less of a need for the exemption. *See South Shore*, 308 F.3d at 100.

---

4. This is not to say, however, that if a provider satisfies the relocation requirements under

PRM–1 § 2533.1(B)(3), that it is not eligible for an exemption from the cost limits.

Providence argues that even if 42 C.F.R. § 413.30(e) is ambiguous, the Secretary's decision is nonetheless invalid. Relying largely on *Ashtabula*, Providence confines its argument to rebutting the Secretary's policy rationales for its interpretation. As the *South Shore* court held, however, *Ashtabula* "erects the wrong decisional framework." *Id.* at 101. The burden is not on the Secretary to prove that his interpretation is reasonable. Rather, the burden falls on Providence to show that the Secretary's reliance on the proffered policy concerns and rationales is unreasonable. *See id.* Providence has not met this burden, and the district court erred in following *Ashtabula* and dismissing the Secretary's policy arguments.

42 C.F.R. § 413.30(e) is ambiguous. In his discretion, the Secretary has chosen to interpret the terms "provider" and "previous ownership" broadly in order to narrow the application of the exemption. We hold that the Secretary's decision reasonably conforms to the wording and purpose of this regulation.

### C. *Equivalency*

 Providence asserts that even if the Secretary's interpretation is correct, it is entitled to new provider status because the transferred beds were not Medicare-certified. 42 C.F.R. § 413.30(e) states that "[a] new provider is a provider of inpatient services that has operated as the type of provider (*or the equivalent*) for which it is certified for Medicare, under present and previous ownership, for less than three full years." 42 C.F.R. § 413.30(e) (emphasis added). Summitview was Medicaid-certified from 1974 to 1991, and has been dually Medicaid and Medicare-certified since 1992. Medicare and Medicaid nursing facilities provide a similar range of basic services. *South Shore*, 308 F.3d at 106. Further, the PRRB also made a factual

determination that Summitview had indeed rendered skilled nursing services at its facilities during the three-year look-back period prior to the sale of the bed rights, thereby precluding an application of the exemption under 42 C.F.R. § 413.30(e). Providence did not challenge this factual determination on appeal. We therefore uphold the PRRB's equivalency determination.

REVERSED and REMANDED for entry of judgment.