**Jesse R. VILLEGAS, an individual and on behalf of others similarly situated, Plaintiff,**

**v.**

**THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA, a California corporation, The Pep Boys—Manny, Moe & Jack, a Pennsylvania corporation, Pepboys Auto, an entity unknown, Defendants.**

No. CV 06–07642 DDP (VBKx).

United States District Court, C.D. California.

May 6, 2008.

Peter M. Hart, Peter M. Hart Law Offices, Marina Del Rey, CA, Kenneth H.

Yoon, Kenneth H. Yoon Law Offices, Los Angeles, CA, for Plaintiffs.

Nicole A. Diller, Donna Mo, John S. Battenfeld, Morgan Lewis and Bockius, Los Angeles, CA, for Defendants.

Daniel M. Feinberg, Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Oakland, CA, Aaron D. Kaufmann, Hinton Alfert & Sumner, Walnut Creek, CA, for Jose Machado.

## ORDER DENYING FINAL APPROVAL OF SETTLEMENT AND REMANDING TO STATE COURT

DEAN D. PREGERSON, District Judge.

This matter is before the Court on Plaintiff Jesse R. Villegas' Motion for Final Approval of Class Action Settlement and class member Jose Machado's Objection to Class Action Settlement. Villegas and Machado have brought similar actions against Defendant Pep Boys. *Villegas v. Pep Boys*, CV06–07642–DDP–VBK; *Machado v. Pep Boys*, CV08–01469–DDP–VBK. After considering the papers submitted and considering the arguments therein, the Court finds that it lacks subject matter jurisdiction and remands both the *Villegas* and the *Machado* cases to state court. The Court, therefore, denies the motion for final approval of the class settlement.

## I. BACKGROUND

Plaintiff Jesse R. Villegas ("Villegas") filed a Complaint in Los Angeles Superior Court on October 20, 2006 against Defendant Pep Boys of California, his former employer. In his Complaint, Villegas alleged class-wide violations of California Labor Code 227 and California Business and Professions Code 17200 arising from Defendant's failure to pay employees their accrued vacation pay. Defendant removed the case to this Court on November 30, 2006 on the grounds of ERISA preemption.[1]

Soon thereafter, this Court issued an Order to Show Cause asking the parties to brief whether the vacation leave provisions of the "Pep Boys Welfare Benefit Plan" was governed by ERISA. (Order to Show Cause, March 7, 2007.) In response, Plaintiff argued that the Plan is not subject to ERISA because the vacation pay constitutes an exempted "payroll practice" pursuant to 29 C.F.R. §§ 2510.3–1(b)(2), 2510.3–1(b)(3)(I). Defendant argued that its Plan is governed by ERISA, that the vacation benefits are not a payroll practice, and that its Plan meets the United States Department of Labor's guidelines for ERISA applicability.

Following briefing and oral argument on the Order to Show Cause, the Court found that the Plan was governed by ERISA. The Court found it was appropriate to apply the Department of Labor's four-part factor test for determination whether a vacation benefits plan is governed by ERISA. In applying that test, the Court held "that the balance tips *slightly* in favor of ERISA-preemption." (Order, at 6) (emphasis in original). Recognizing that "this case is close and that the law on this issue is far from clear," the Court concluded as follows: "[T]he Court currently finds that Defendants' vacation benefits plan falls under ERISA. This finding is made without prejudice to any subsequent motion by Plaintiff." (Order, at 8.)

Subsequently, the parties commenced formal discovery and then proceeded to engage in settlement negotiations. These negotiations included a one-day mediation session and numerous telephone and written exchanges facilitated by the mediator. The parties were able to agree on settle-

---

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 et seq.

ment terms and jointly submitted a request for preliminary settlement approval. (Joint Motion for Order Granting Preliminary Approval of Class Action.)

The Court granted preliminary approval of the class settlement on January 28, 2008. The settlement class was certified pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), meaning that absent class members were permitted to object to settlement but did not have opt-out rights. (*See* Preliminary Approval Order, at 2, 5.) The class definition provides:

> Class means each and every California employee of the Company from October 20, 2002, through the present (i) who is or was a participant in the Plan, and (ii) whose rights to vacation benefits as an employee were determined according to the Plan rather than according to provisions of California law that govern vacation pay.

(Declaration of Daniel Feinberg ("Feinberg Decl."), Class Notice, Exh. C.) Among its provisions, the settlement requires that Defendant to pay $1,350,000, with an allocation of $1 million to the class and $337,500 to attorney's fees.

Meanwhile, Jose Machado, who objects to the current proposed settlement, filed a class action against Defendant in San Diego Superior Court on December 27, 2007. That action alleges the same claims as those alleged in Villegas' Complaint. Defendant removed Machado's action to the Southern District of California. Machado and Defendant then stipulated to transfer to this Court as a related case and to stay proceedings pending the outcome of Villegas' final approval hearing.

Machado objects to the proposed settlement in the Villegas' action on several grounds. First, Machado argues that the Court lacks jurisdiction to approve settlement based upon the inapplicability of ERISA preemption and must remand to state court. Second, Machado raises objections to the adequacy of settlement, including the absence of opt-out rights where the proposed settlement certifies a mandatory class pursuant to Rule 23(b)(1) and the failure of class notice to inform class members of the attorney's fees that would be awarded upon approval of the settlement.

## II. DISCUSSION

A district court's approval of a class action settlement is contingent on "finding that it is fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(2); *see also Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir.2003). A district court is required to consider class members' objections to a class action settlement. Fed. R. Civ. Pro. 23(e)(5); *Devlin v. Scardelletti,* 536 U.S. 1, 14, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002).

### A. *ERISA Preemption*

The Court must remand to state court if it determines, as Machado urges, that ERISA preemption does not apply because it would thereby lack subject matter jurisdiction. *See, e.g., Kelton Arms Condo. Ass'n, Inc. v. Homestead Ins. Co.,* 346 F.3d 1190, 1192 (9th Cir.2003). Given Machado's jurisdictional objection, the Court will revisit the issue of ERISA preemption.

### 1. *The Court's Order on the Order to Show Cause*

The Court has reviewed its previous Order, the papers submitted in connection with its earlier Order to Show Cause, and the papers submitted with respect to the proposed class settlement. The Court adopts the following analysis from its previous Order:

> The issue before the Court is whether Defendants' vacation benefits plan is an ERISA-regulated plan. Section 3(1) of ERISA defines an employee welfare benefit plan as "any plan, fund, or program which was heretofore or is hereaf-

ter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries ... vacation benefits...." 29 U.S.C. § 1002(1). ERISA does not further define "plan, fund, or program" or "vacation benefits," and does not specify whether every policy to provide vacation benefits falls within its ambit.

The Supreme Court clarified this ambiguity somewhat in *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). In *Morash*, the Court held that an employer's practice of paying employees' vacation benefits from the employer's general assets did not implicate ERISA and was an exempted "payroll practice" under 29 C.F.R. 2510.3–1(b). *Id.* at 117–18, 109 S.Ct. 1668. The Court explained that when vacation benefits are payable from the general assets of an employer and not a separate trust, the employees are not afforded the protections from fund mismanagement that Congress sought to regulate through ERISA. The Court reasoned that because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employee's control, they present none of the risks that ERISA was intended to address, and thus fell outside its scope. *Id.* at 115, 109 S.Ct. 1668.

The *Morash* court also noted, however, that the creation of a separate fund to pay employees vacation benefits would subject a single employer to the regulatory provisions of ERISA. *Id.* at 114, 109 S.Ct. 1668. But as the Ninth Circuit explained in *Alaska Airlines, Inc., v. Oregon Bureau of Labor*, 122 F.3d 812 (9th Cir.1997), an employer must do more than create a separate fund for benefits payments to qualify for ERISA preemption; that separate fund must be *actually liable* for the benefits. For example, in *Alaska Airlines*, the airline created a welfare plan for the payment of sick leave and other employee benefits. *Id.* at 813. It also created a trust to administer the benefits payments. *Id.* Instead of paying sick leave benefits directly from the trust, however, the airline entered into a repayment agreement with the trust, under which the airline paid sick leave benefits directly to employees from its general funds and then sought reimbursement from the trust. *Id.* The Ninth Circuit held that the airline's system of benefits payments was not an ERISA-regulated plan. The Court explained that the airline was not transmitting funds the trust had given it to pay the employee; rather, it was paying first, and seeking reimbursement later. *Id.* at 814. The Court held that the airline's payment from its general assets qualified as a payroll practice under the plain words of ERISA. *Id.*

The Court did not, however, end its analysis there. The Court also concluded that the "substance" of the airline's plan was not necessarily one of a funded benefit program. *Id.* For example, there was no clear relation between the amount of funds in the trust and the sick leave liability accrued by the airline's employees. *Id.* Under the airline's plan, employees were depending on the financial health of their employer, rather than the financial health of the trust, for their benefits payments. *Id.* Accordingly, the Court found that the airlines system had more of the characteristics of an unfunded payment than of an ERISA trust fund payment. *Id.*

After the *Morash* and *Alaska Airlines* decisions, the Department of Labor ("DOL") issued several advisory opinions explaining when a vacation benefits plan would qualify as an ERISA-regulated plan. *See* DOL Advisory Opinion

2004–10A (12/30/2004), 2004 ERISA LEXIS 11 ("Adv.Op.2004–10A"); DOL Advisory Opinion 2004–08A (7/2/2004) 2004 ERISA LEXIS 9 ("Adv.Op.2004–08A"). The Ninth Circuit has held that advisory opinions interpreting an ambiguous Labor regulation—such as the one before the Court—are controlling unless they are "plainly erroneous or inconsistent with the regulation." *Bassiri v. Xerox Corp.*, 463 F.3d 927, 931 (9th Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)). Thus, providing that the DOL's interpretation of when a vacation benefits plan is ERISA-regulated is not plainly erroneous nor inconsistent with ERISA, the Court will apply the DOL test for ERISA-applicability to Defendants' plan.

(Order Re: Remand, at 3–5.)

After offering this analysis in its previous Order, the Court found that the DOL's interpretations in its advisory opinions, regarding when a vacation benefits plan is governed by ERISA, were not plainly erroneous or inconsistent with 29 C.F.R. 2510.3–1(b).[2] The Court, therefore, proceeded to apply the DOL's four-part test, articulated in the aforementioned advisory opinions, for determining whether a separate trust to pay vacation benefits is an "employee benefit plan" under ERISA. Finding that Defendant's Plan satisfied the DOL test, the Court also indicated that the

**2.** The Court did not explicitly determine whether the regulation was ambiguous as a predicate to its finding that the DOL interpretations were entitled to deference. *See Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("*Auer* deference is warranted only when the language of the regulation is ambiguous.... To defer to the agency's position [where the regulation is not ambiguous] would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation."). Nevertheless, proceeding to

law in this area is unclear and that Villegas was entitled to raise the issue of jurisdiction in a later motion. (Order, at 6–8.)

### 2. *Machado's Objection*

The issue of jurisdiction based upon ERISA preemption is again before the Court, albeit on class member Machado's objection to settlement. Class member Machado argues that Defendant's trust is an ERISA-exempt "payroll practice" under 29 C.F.R. 2510.3–1(b) because it utilizes an "advance and recapture" system for vacation payments, which means it pays employees their vacation benefits, the trust reimburses Defendant for disbursed funds, and Defendant deposits contributions into the trust for subsequent reimbursements. Plaintiff Villegas and Defendant counter that the settlement is appropriate. Defendant, in particular, contends that the Court's earlier jurisdictional ruling was correct in finding that the trust was governed by ERISA.

Notably, class member Machado directs the Court to relevant case law from this district not previously addressed by the Court in connection with the Order to Show Cause. The Court finds this case law instructive. In *Lombardo v. Broadway, Inc.*, 1996 U.S. Dist. LEXIS 22369 (C.D.Cal.1996), the employer operated its trust on an "advance and recapture" basis. *Id.* at *3. In holding that the trust was not an ERISA plan,[3] the court reasoned:

consider whether the DOL interpretations were erroneous or inconsistent with the regulation was appropriate because 29 C.F.R. 2510.3–1(b) is ambiguous. The meaning of "an employer's general assets" is not so "free from doubt" as to be unambiguous. *See Bassiri*, 463 F.3d at 931 (finding the same for the phrase "normal compensation") (citing *Providence Health System–Washington v. Thompson*, 353 F.3d 661, 665 (9th Cir.2003)).

**3.** The court in *Lombardo* also stated the rule that "an employer's policy of paying vacation benefits out of its general assets is a 'payroll

"Advance and recapture" plans do not implicate Congress' concern about mismanagment of accumulated funds, because the benefits are paid directly by the employer from its general funds. Therefore, the amount of assets in the trust is irrelevant; the main purpose of the trust fund is to reimburse the employer. Likewise, Congress' concern regarding the failure to pay benefits from accumulated funds is not applicable to this case. The risk of a failure to pay benefits is identical to the risk of non-payment of wages for work performed, because the vacation benefits are paid to employees by Broadway, and the employees do not look to the Fund for reimbursement.

*Id.* at \*8 (citations omitted).

In *Gilbert v. Securitas Security Servs.*, CV06–1981 CAS (MANx) (C.D.Cal. February 27, 2007), the court similarly addressed an "advance and recapture" system for vacation payments. The court followed *Lombardo* in rejecting an employer-defendant's contention that the VEBA trust, in having sufficient assets to cover vacation benefits during a particular period, thereby qualified as an ERISA plan. *Id.* at 4–5. Relying on *Alaska Airlines* instruction to literally apply the exemption from ERISA regulation for "payroll practices," the court held that the "advance and recapture" system was not an ERISA plan. *Id.* at 5.

### 3. *The DOL Opinions*

In light of this case law and other controlling authority, the Court is convinced that further consideration of the DOL advisory opinions is warranted. The DOL advisory opinions attempt to address the same question at issue here: when a trust or other separate fund for payment of vacation benefits qualifies as an "employee benefit plan" subject to ERISA.[4] In the Denny's Advisory Opinion, 2004 ERISA LEXIS 11 ("Denny's opinion"), cited in the Court's previous Order, the DOL considered a trust that did not operate as an "advance and recapture" system, but rather, made vacation payments directly to employees. *Id.* at \*2–\*4.[5] The DOL determined:

> [A]ssets held in a separate trust with terms such as those described above in the Plan's VEBA Trust document do not constitute general assets of the employer for purposes of the Department's regulation at 29 C.F.R. 2510.3–(1)(b). Accordingly, the Plan would not be exempt payroll practice under that regulation.

*Id.* at \*6. Presumably, the DOL's finding was based upon the facts that the trust made payments directly to employees from the trust account and issued those payments in checks separate from an employee's normal paycheck. *See id.* at \*4.

Notwithstanding its finding, the DOL explained that an employer's vaca-

---

practice' and not an 'employee welfare benefit plan.'" *Id.* at \*5 (citing *Morash*, 490 U.S. at 116–117, 109 S.Ct. 1668.)

**4.** This issue remains an unsettled question for reasons articulated in the *Lombardo* decision:

The dicta in both *Morash* and *Henning* on which [defendant] relies is to the effect that if an employer pays vacation benefits out of a separate fund, instead of its general assets, this could, in some circumstances, be considered an "employee welfare benefits plan" within the meaning of ERISA. Neither opinion articulated the methods of funding it contemplated in proffering these observations.

*Lombardo*, 1996 U.S. Dist. LEXIS 22369, at \*6. The Ninth Circuit in *Alaska Airlines* also acknowledged the language in *Morash*, but did not give clear guidance as to when a separate fund for paying vacation benefits could qualify as an ERISA plan. *See Alaska Airlines*, 122 F.3d at 814.

"Participants must submit a request to the Plan prior to taking vacation in order to receive vacation pay from the Plan." *Id.* at \*1–2.

**5.** "Participants must submit a request to the Plan prior to taking vacation in order to receive vacation pay from the Plan." Id. at \*1–2.

tion plan, even if considered a separate trust that does not pay vacation benefits from its general assets under 29 C.F.R. 2510.3–1(b), was required to meet independent requirements under section 3(1) of ERISA to qualify as an "employee benefit plan." *Id.* at *6–7. The DOL articulated these independent requirements in the four-part test applied by this Court in its previous Order. The test provides: (1) the trust paying the benefits must be a bona fide separate fund; (2) the trust must have a legal obligation to pay plan benefits; (3) the employer must have a legal obligation to make contributions to the trust; and (4) the contributions must be actuarially determined or otherwise bear a relationship to the plan's accruing liability. *Id.* at *9. Applying that test in the Denny's opinion, the DOL was "unable to conclude" that the vacation benefits plan was an ERISA plan. That there was a separate trust with a legal obligation to pay benefits and an obligation on Denny's to make contributions to the trust did not "operate to change the essential nature of the Trust as a mere pass-through vehicle for the employer's payment of ordinary vacation wages or result in the Trust constituting a separate fund that provides genuine protections for [the accrued benefits] under the plan each year." *Id.* at *9–10.

The DOL again applied this test in the May Company advisory opinion. DOL Advisory Opinion 2004–08A, 2004 ERISA LEXIS 11 ("May Company opinion"). The trust there used an "advance and recapture" system with the employer disbursing vacation benefits through its normal payroll system and later seeking reimbursement from the trust. The DOL was "unable to conclude" that the employer's system was a payroll practice under 29 C.F.R. 2510.3–(1)(b), reasoning as follows: "Although the vacation pay is distributed directly from the general assets of May Company, in the Depart-

ment's view, the regulation's safe harbor for general asset vacation pay payroll practices does not reach programs such as the May Company's that include a VEBA Trust dedicated to the vacation pay benefits." *Id.* at *6. Nevertheless, applying the four-part test, the DOL determined that the trust, while a separate fund, was not an ERISA plan because the trust was not liable for payment of vacation wages and was primarily designed to reimburse the employer, and the employer was not obligated to fund the trust, although it made voluntary annual contributions. *Id.* at *9–10.

### 4. *Analysis*

Having reviewed the case law identified by class member Machado and the DOL advisory opinions, the Court is prepared to reconsider its earlier jurisdictional ruling. Were the Court to base its decision solely on the case law, it would not hesitate to rule that Defendant's "advance and recapture" method of paying vacation benefits does not constitute an ERISA plan. The Ninth Circuit in *Alaska Airlines* found no ERISA plan based upon the plain language of 29 C.F.R. 2510.3–(1)(b); where an employer first paid the employee directly and then sought reimbursement later, vacation benefits were paid "out of the employer's general assets." 814. Several district court decisions, including *Lombardo* and most recently the *Gilbert* case, have followed use of a literal application of the regulation in finding that an "advance and recapture" method of paying vacation benefits is not governed by ERISA. Insofar as the "actual methods of payment" for Defendant's trust mirrors the "advance and recapture" systems in those cases, *see Alaska Airlines,* 122 F.3d at 814, the appropriate conclusion under the relevant case law seems to be that Defendant's vacation payments qualify as a "payroll practice" under the regulation and its trust does not constitute an ERISA plan.

The DOL opinions, however, give the Court pause. Both opinions take the position that a separate VEBA trust is not an ERISA-exempt payroll practice under 29 C.F.R. 2510.3–(1)(b). This suggests at first glance a position contrary to the case authority holding that a separate fund, at least where it operates according to an "advance and recapture" scheme, is not an ERISA plan because vacation payments are made from "an employer's general assets" under the regulation. To the extent the DOL opinions are controlling, Defendant's trust would not fall under the 29 C.F.R. 2510.3–(1)(b) exemption. Before turning to Defendant's trust, the Court must first determine the appropriate level of deference for the DOL opinions.

■■■ In its previous Order, the Court followed the DOL's four-part test based upon *Auer* deference. That rule provides that "where an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer*, unless 'plainly erroneous or inconsistent with the regulation.'" *Bassiri*, 463 F.3d at 931 (citing *Auer*, 519 U.S. at 461, 117 S.Ct. 905). However, at that time, the parties did not address whether the alternative standard of deference from *Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) would be appropriate. Under *Christensen*, an agency's interpretation of a statute, rather than one of its own regulations, receives a lesser degree of deference; it remains "entitled to respect" but "only to the extent that those interpretations have 'the power to persuade.'" *See Christensen*, 529 U.S. at 587, 120 S.Ct. 1655.

The Court finds that the DOL opinions, at least in part, interpret when vacation benefits are paid from an employer's "general assets" under 29 C.F.R. 2510.3–(1)(b), and insofar as those opinions interpret the

regulation, they are entitled to *Auer* deference. The DOL opinions first find that separate VEBA trusts are not ERISA-exempt payroll practices. That finding is entitled to *Auer* deference because it involves an interpretation of what qualifies as payment from an "employer's general assets" under the regulation. Both DOL opinions continue that "such programs are subject to further evaluation under section 3(1) of ERISA to determine whether the program [is an ERISA plan]" and then articulate the four-part test. Because the four-part test arises from an interpretation of the statute itself, that test receives the lesser *Christensen* deference.

Applying *Auer* deference, the DOL's interpretation of 29 C.F.R. 2510.3–1(b) in the Denny's opinion is not clearly erroneous nor inconsistent with the regulation. It is apparent that payments of vacation benefits made directly by a separate trust are not "out of an employer's general assets." *See* Denny's opinion, at *6. The Court cannot, however, say the same for the DOL's interpretation in the May Company opinion. It is inconsistent with the plain language of the regulation to find, on the one hand, that "the vacation pay is distributed directly from the general assets of May Company," yet conclude that those payments do not arise "out of the employer's general assets." *See* May Company opinion, at *6. Accordingly, the Court does not follow that interpretation.

■■■ To give meaning to the Supreme Court's observation in *Morash* that "the creation of *a separate fund to pay employees vacations benefits*" would trigger ERISA regulation, 490 U.S. at 114, 109 S.Ct. 1668 (emphasis added), it makes sense to have a threshold requirement that the separate fund in fact make the payments to employees, as opposed to serving as conduit to reimburse for payments actually made by the employer. Such a rule adheres to the plain language of the regu-

lation finding payments "out of an employer's general assets" to be exempt from ERISA, and is consistent with *Alaska Airlines* and the several district court cases considered here. While a separate fund paying vacation benefits does not by itself establish an ERISA plan, as recognized by the DOL in the Denny's opinion, this type of arrangement serves to distinguish a fund that might qualify as an ERISA plan from the payment of normal compensation "out of an employer's general assets." *See* 29 C.F.R. 2510.3–1(b).

■ Here, "[t]he Trust Agreement instructs Pep Boys to act as the Trustee's agent by advancing benefit payments owed to participants, and then to request reimbursement for these amounts from the Trust, without benefit of any interest or other finance charges." (*See* Def.'s Joinder 5, citing Daga Decl. 3, Exh. 1) (Trust Agreement, at 26–27.) In other words, Defendant operates an "advance and recapture" system similar to the trusts in *Alaska Airlines, Lombardo,* and *Gilbert* that were found not to be ERISA plans for making payments from "general assets." The Court agrees that such plans not only are exempt under the plain terms of the regulation, but also, do not implicate the two principal abuses that Congress sought to address when including vacation benefits within ERISA: mismanagement of funds accumulated to finance such benefits and failure to pay employees the benefits promised. *See Lombardo,* 1996 U.S. Dist. LEXIS 22369, at *6; *see also Morash,* 490 U.S. at 115, 109 S.Ct. 1668. Accordingly, the Court finds that Defendant's "advance and recapture" system is an ERISA-ex-

empt "payroll practice" that does not qualify as an ERISA plan.

Defendant argues that its trust is governed by ERISA based upon the DOL's four-part test. Given its analysis of the advisory opinions, the Court does not consider the four-part test applicable here. Even if the Court were persuaded to apply the DOL's four-part test for arrangements such as the one considered in the Denny's opinion, the Court finds it inconsistent to suggest that an "advance and recapture" scheme falls outside the "general assets" exemption in the regulation. Under circumstances such as those here, the Court need not reach the four-part test. Where, as here, the trust is part of an "advance and recapture" arrangement and the vacation payments come from the employer's "general assets," the regulation is dispositive.

Even if the Court were to apply the test here, the Court no longer considers Defendant's trust to satisfy that test. Defendant argues that its trust is distinguishable from those in *Alaska Airlines, Lombardo,* and other cases because it has maintained around $13,000,000 in funds, whereas the trusts in the other cases maintained lower trust balances that were unable to cover accrued benefits.[6] These larger balances, however, do not establish a relationship between the fund and employee's accrued benefits. In fact, the evidence shows that on or around the dates when the trust transfers funds to Defendant, Defendant in turn makes contributions to the trust to cover future reimbursements. (Feinberg Decl. Exh. B; *see also* Daga Decl. Exhs. 4, 5.)[7] While the trust is separate in form,

---

6. For example, the trust in *Alaska Airlines* maintained between $1,000 and $7,000,000. The trust in *Lombardo* maintained between $495,000 and $2,000,000. The trust in *Czechowski* never held more than $1,000.

7. Although the evidence of Defendant's contributions and the trust's reimbursements were before the Court on the Order to Show Cause, this evidence was not offered to the Court in the manner presented by class member Machado. This presentation gives the

the substance of Defendant's arrangement is the same as any employer that reserves funds for purposes of paying employee compensation. The trust may have liability for vacation payments and Defendant may have the legal obligation to contribute to the fund, but the principal purpose of the trust is reimbursement, not funding vacation benefits. That Defendant contributes large sums for vacation payments is irrelevant. This is not the kind of separate trust that constitutes an ERISA plan.

## B. *CAFA*

Plaintiff Villegas and Defendant argue that the Court has jurisdiction, even if it finds no ERISA preemption, under the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. 1332(d)(1)(B) & 28 U.S.C. 1453. However, Defendant did not remove to federal court on the basis of CAFA. The sole basis for Defendant's removal to federal court was ERISA preemption. (Def.'s Notice of Removal.)

A removal petition must be filed within thirty days of receiving a complaint and must state the basis for removal to federal court. 28 U.S.C. 1446. The notice of removal "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." *O'Halloran v. Univ. of Washington,* 856 F.2d 1375, 1381 (9th Cir.1988). The Court finds that it lacks jurisdiction since this case was removed on the basis of ERISA, not CAFA, there is no jurisdiction based upon ERISA preemption, and the time for amending the removal petition has long passed.

At oral argument, Defendant pointed to authority that it suggested would allow the Court to approve the settlement so long as the jurisdictional defect-here, no ERISA preemption—was cured, by finding in this instance jurisdiction under CAFA. *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996); *Parrino v. FHP, Inc.,* 146 F.3d 699 (9th Cir.1998); *see also Soliman v. Philip Morris, Inc.,* 311 F.3d 966 (9th Cir.2002). However, those cases only stand for the proposition that a judgment will not be reversed and remanded by an appellate court when a procedural defect at the time of removal is cured at the time of judgment. *See, e.g., Parrino,* 146 F.3d at 703. The case law does not say that a district court should not remand upon finding a jurisdictional defect.

In any event, based on the current record, the Court also finds that Defendant has not carried its burden on removal of proving by a preponderance of the evidence that the $5,000,000 amount in controversy requirement for CAFA jurisdiction has been established.[8] *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Because the Court has determined that ERISA preemption does not provide a basis for jurisdiction, the Court remands to state court.

## III. CONCLUSION

A court either has jurisdiction or it does not. Having determined that it lacks jurisdiction, the Court is unable to approve the settlement. *See Jones v. Giles,* 741

---

Court a new appreciation of Defendant's "advance and recapture" arrangement.

8. Villegas has represented that the class's total claim amounted to around $5,000,000 although the precise amount has been disputed. Defendant cannot rely on Villegas' bare assertions to carry its burden of showing the amount in controversy has been met. Furthermore, it appears that this figure may include amounts that should not be considered in calculating the amount in controversy. Either way, the Court does not consider the assertion of a $5,000,000 amount to show that it is more likely than not that the amount in controversy has been met.

F.2d 245, 248 (9th Cir.1984) (explaining that the "absence of subject matter jurisdiction may render a judgment void where a court wrongfully extends its jurisdiction beyond the scope of authority. . . .").

The Court is aware of the parties' diligent efforts to reach settlement in this case and understands that this jurisdictional ruling will for the moment delay concluding this matter. The Court also acknowledges that the parties may have engaged in settlement with certain expectations based upon the previous ruling on the Order to Show Cause. In receiving an objection to the settlement, however, the Court was required to reconsider the basis for federal jurisdiction. Having gained through review a deeper appreciation of the relevant law and facts of this case, the Court finds its decision to remand for lack of jurisdiction appropriate. The Court cannot approve a settlement knowing of the jurisdictional defect. The Court encourages the parties, even with the change in procedural posture of this case, to continue in their efforts to reach settlement.

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction. The Court REMANDS *Villegas v. Pep Boys*, CV06–07642–DDP–VBK, to state court. *Machado v. Pep Boys*, CV08–01469–DDP–VBK, was stayed pending resolution of *Villegas*. For the reasons that *Villegas* is remanded to state court, the Court removes the stay and remands the *Machado* case to state court. The Court, therefore, DENIES the motion for final approval of the settlement in *Villegas*.

IT IS SO ORDERED.