# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PUBLIC LANDS FOR THE PEOPLE,
INC., a California 501 C-3, non-
profit corporation; GERALD E.
HOBBS; BRYAN BUNTING; HILLARIE
BUNTING; STEVE WANDT; GENE E.
BAILEY; RICHARD NUSS; RANDY
BURLESON, individuals,
            *Plaintiffs-Appellants,*

            v.

UNITED STATES DEPARTMENT OF
AGRICULTURE; UNITED STATES
FOREST SERVICE; TOM VILSACK, in
his official capacity as Secretary
of Agriculture; TOM TIDWELL, in
his official capacity as Chief
Forester of the USDA Forest
Service; RANDY MOORE, in his
official capacity as Regional
Forester USDA Forest Service
Regional Office R5; RAMIRO
VILLALVAZO, in his official
capacity as Forest Supervisor of
the El Dorado National Forest,
            *Defendants-Appellees.*

No. 11-15007

D.C. No.
2:09-cv-01750-
LKK-JFM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
April 17, 2012—San Francisco, California

11871

Filed September 26, 2012

Before: Alex Kozinski, Chief Judge, M. Margaret McKeown
and N. Randy Smith, Circuit Judges.

Opinion by Judge McKeown

**COUNSEL**

David Young (argued), Law Offices of David Young, Los Angeles, California, for the plaintiffs-appellants.

Ignacia S. Moreno, Assistant Attorney General, David C. Shilton (argued), Andrew C. Mergen, and Jason A. Hill, Attorneys United States Department of Justice, Environment & Natural Resources Division, Washington, DC; Thomas K. Snodgrass, Attorney United States Department of Justice, Environmental Defense Section, Denver, Colorado, for the defendants-appellees.

**OPINION**

McKEOWN, Circuit Judge:

The Wild West has long conjured up images of prospectors with pack mules and pickaxes foraging for gold. The oft-romanticized ways of the Wild West eventually modernized and gave way to prospecting with the aid of motor vehicles and heavy machinery. The United States Forest Service (the "Forest Service"), an arm of the Department of Agriculture, recently limited the use of motor vehicles to certain roads in the century-old Eldorado National Forest ("ENF"). Concerned about the impact of the limitation on their activities, a group of miners and prospectors challenged the Forest Service's decision. The district court dismissed the complaint, and we affirm.

**BACKGROUND**

Beginning in 2005, the Forest Service published a Notice of Intent to propose prohibitions on motor vehicle use in the ENF, held public meetings, and circulated for public comment a draft environmental impact statement on proposed travel management in the ENF. The Final Environmental Impact Statement ("FEIS"), issued in March 2008, recognized that if prohibitions on motor vehicle use were adopted, miners and prospectors would need to obtain permission, through a Notice of Intent or Plan of Operations, to use motor vehicles in areas where no such permission restriction existed before. The FEIS noted the effect of 36 C.F.R. § 228, which requires miners to obtain pre-authorization when conducting certain operations:

> Individuals or companies that conduct prospecting and exploration activities are not usually required to obtain a permit or other form of authorization, pursuant to 36 CFR 228, but must comply with other Forest rules and regulations. Access associated with mineral development activities, such as for an active mine, is commonly dealt with through a Plan of Operations or Notice of Intent, pursuant to 36 CFR 228.

The FEIS explicitly acknowledged that, because mining and prospecting are "facilitated by the use of public wheeled motor vehicles for access and hauling of equipment," restrictions on motorized vehicle use in areas with likely mineral resources "may have the affect [sic] of reducing access for prospecting or exploration, with the subsequent effect of a reduction of discovery of new mineral resource commodities."

In April 2008, the Forest Service issued a decision limiting motor vehicle use in the ENF to certain roads and trails and prohibiting public wheeled motor vehicle cross-country travel

(the "2008 Decision"). The 2008 Decision specifically limits motor vehicle use by the public to "1,002 miles of ML-2 roads and 210 miles of trails," while concurrently disallowing motor vehicle use on 502,000 acres of previously open forest land.[1] According to the Forest Service, the 2008 Decision provides "diverse public wheeled motor vehicle opportunities," while minimizing effects on both forest resources and wildlife and "limiting conflict between wheeled motor vehicle use and other recreation opportunities."

Appellants ("the Miners") are seven individuals who wish to use motor vehicles to pursue mining or prospecting activities in the ENF, and Public Lands for the People, Inc., an association of miners and prospectors. Some of the individuals claim existing mining rights within the ENF, while others simply anticipate prospecting for minerals. The Miners allege that, due to the 2008 Decision, they "could [now] be subject to criminal and civil penalties for failure to file a Notice of Intent or Plan of Operations should they proceed [with motor vehicle use] without such authorization." The Miners seek "to vindicate Federal rights of access to prospect, and access their mining claims" by continuing to use motor vehicles on ENF roads in the same manner as they did before the 2008 Decision.

The Miners claim that the Forest Service is without authority to restrict their motor vehicle use and that the Forest Service "acted arbitrarily and capriciously by requiring that entry onto roads and rights of way previously open, and now closed due to the [2008 Decision], requires a Notice of Intent or Plan of Operations pursuant to 36 C.F.R. § 228.4(a) in order to prospect and/or access a valid Federal mining claim and min-

---

[1]The 2008 Decision did not implicate roads "managed for standard four wheel passenger vehicles" (ML-3 to ML-5 roads). Nor did the Decision affect "an additional 334 miles of State, county and private roads on the ENF and 311 miles of roads and trails within the Rock Creek Recreational Trails area."

eral estate." The district court held that the Miners failed to establish standing and, alternatively, that they failed to state a claim upon which relief could be granted because the Secretary of Agriculture had the authority to impose the road restrictions and reasonably interpreted a Forest Service regulation pertaining to "public roads."

ANALYSIS

## I.  STANDING

**[1]** "Article III . . . gives the federal courts jurisdiction over only 'cases and controversies.' " *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990) (citation omitted). The oft-cited *Lujan v. Defenders of Wildlife* case states the three requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability. 504 U.S. 555, 560-61 (1992). With respect to the "injury in fact" requirement, the threat of injury must be "concrete and particularized; . . . actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

The district court sua sponte dismissed the Miners' first amended complaint for lack of standing. According to the district court, the "injury in fact" prong required the Miners to identify specific mining claims affected by the 2008 Decision, as well as the road closures that limited their ability to access those claims. "Because the district court sua sponte dismissed [the Miners'] complaint on its face," we review "standing as if raised in a motion to dismiss." *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). We "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (internal quotation marks and citation omitted).

**[2]** The district court's restrictive approach unduly burdens the standing requirements with bells and whistles not imposed

by the Supreme Court. The Miners' standing to bring suit rests on their claim that they should not be forced to obtain advance approval either to access their claims *or* to prospect for minerals. It doesn't depend on the details of their mining rights. As the government acknowledges, and we appreciate its candor, road closures pursuant to the "[2008] Decision place[ ] at least a modest burden on prospectors or miners who before that decision did not have to request that authorization."

The Miners' allegations are not vacuous. Some of them are apparently no longer able to access their mining claims. For example, the Bunting family claims "access to their Federal mining claims and mineral estates has been closed pursuant to the FEIS and [Record of Decision], in that Forest Road 13N92 is now closed to wheeled motorized vehicles." Identical allegations are made by another miner, Bailey, regarding Road 14N25G.

**[3]** We must accept these allegations as true. They are sufficient to establish standing under the *Defenders of Wildlife* factors. Some of the Miners have suffered an injury in fact because they can no longer access their mining claims via motor vehicles without first filing a Notice of Intent or Plan of Operations. The denial of access is "fairly traceable" to the 2008 Decision, and it could be redressed by a court order striking down the prohibition on vehicular access. The Miners aren't required to identify particular mining claims to satisfy constitutional standing. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (noting that in a motion to dismiss, we "presume[ ] that general allegations embrace those specific facts that are necessary to support the claim").

**[4]** The harm alleged here is not unlike that in *Karuk Tribe of Cal. v. United States Forest Serv.*, in which we recently held that a Native American tribe had standing to challenge a Forest Service decision that allowed mining because such "operations could impact the Tribe's ability to enjoy the spiri-

tual, religious, subsistence, recreational, wildlife, and aesthetic qualities of the areas affected by the mining operations, . . . [and] any alleged failure of the Forest Service to properly regulate mining operations could directly and adversely harm the Tribe and its members." 681 F.3d 1006, 1019 (9th Cir. 2012) (en banc) (internal quotation marks omitted). Similarly, the Forest Service's decision to prohibit motor vehicle use on Forest Roads 13N92 and 14N25G "directly and adversely" harms Bailey and the Buntings by preventing them from using motor vehicles to access their mining claims. Because the presence of at least one party with standing assures that the controversy before the court is justiciable, the Miners have standing to pursue this action. *See Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 329-30 (1999).

## II. FOREST SERVICE AUTHORITY

[5] We now turn to the Miners' claim that the Forest Service lacks authority to restrict motor vehicles use in the ENF. The Forest Service's extensive statutory authority dooms this challenge. Over a century ago, Congress granted the Forest Service broad authority to regulate access to mining claims on National Forest Service lands. The Organic Administration Act of 1897 gives the Secretary of Agriculture authority "to promulgate rules and regulations to protect the national forest lands from destruction and depredation." *Clouser v. Espy*, 42 F.3d 1522, 1529 (9th Cir. 1994); *see* 16 U.S.C. § 551. Although nothing prohibits an individual from entering "national forests for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof," he "must comply with the rules and regulations covering such national forests." *Id.* § 478.

[6] Consistent with this statutory scheme, the Secretary of Agriculture "may adopt reasonable rules and regulations which do not impermissibly encroach upon the right to the use and enjoyment of . . . claims for mining purposes." *United States v. Weiss*, 642 F.2d 296, 299 (9th Cir. 1981). Indeed,

"there can be no doubt that the Department of Agriculture possesses statutory authority to regulate activities related to mining—even in non-wilderness areas—in order to preserve the national forests." *Clouser*, 42 F.3d at 1530 (citing 16 U.S.C. § 551). The Secretary of Agriculture has the right to restrict motorized access to specified areas of the national forests, including mining claims. *Id.* (means of access "may be regulated by the Forest Service"). More specifically, we have upheld Forest Service decisions restricting the holders of mining claims to the use of pack animals or other non-motorized means to access their claims. *Id.* at 1536-38. Relatedly, we have rejected the contention that conduct "reasonably incident[al]" to mining could not be regulated. *United States v. Doremus*, 888 F.2d 630, 632-33 (9th Cir. 1989). Our precedent thus confirms that the Forest Service has ample authority to restrict motor vehicle use within the ENF.

[7] The Forest Supervisor's Record of Decision illustrates the balancing undertaken by the Forest Service:

> The designated system of routes will provide for diverse public wheeled motor vehicle opportunities, provide routes that enhance wheeled motor vehicle recreation, and provide access to dispersed recreation. In prohibiting wheeled motor vehicle use off of designated routes, the Forest is minimizing damage to Forest resources, minimizing harassment of wildlife and limiting conflict between wheeled motor vehicle use and other recreation opportunities.

Among other factors, the Forest Service considered "impacts from motor vehicle use on quiet recreation opportunities" and "impacts to wildlife, water quality, air quality, and other resources." Its goal "was to allow a diversity of highway and non-highway classes of public wheeled motor vehicle use on ML-2 roads, while still reducing environmental impacts." The 2008 Decision struck a balance between competing interests by allowing motor vehicle use by the public on "1,002 miles

of ML-2 native surfaced roads" while prohibiting other vehicular access. Contrary to the Miners' allegations, the 2008 Decision is not an indirect prohibition on mining operations masquerading as an access regulation, and its access restrictions aren't unreasonable.

The Miners claim that a web of statutes creates a national policy that protects self-initiation and encourages prospecting and mining on federal lands by limiting the Forest Service's authority to regulate motor vehicle access on National Forest Service lands. The Miners' argument understates the Forest Service's legitimate authority to regulate access. Although the Miners list a litany of statutes, they do not point to any specific statutory language that strips the Secretary of Agriculture of his authority to regulate motor vehicle use.

[8] We conclude that none of the statutes cited by the Miners cabin the Secretary's authority with respect to vehicular access.[2] No statutory provision gives the Miners an unfettered right to access their mining claims via motor vehicles. *See,* e.g., 30 U.S.C. § 22 ("[A]ll valuable mineral deposits in lands belonging to the United States . . . shall be free and open to exploration . . . by citizens of the United States . . . *under regulations prescribed by law* . . . ." (emphasis added)).

[9] The only specific argument the Miners make is that 16 U.S.C. § 472 restricts the Secretary's discretion because the "Secretary of the Department of Agriculture shall execute or cause to be executed all laws affecting public lands . . . excepting such laws as affect the surveying, prospecting, locating, appropriating, entering, relinquishing, reconveying, certifying, or patenting of any of such lands." The Miners

---

[2]*See* 16 U.S.C. §§ 478, 1134(b); 30 U.S.C. §§ 21a, 22-54, 612, 615; 43 U.S.C. §§ 1701, 1732(b). The Miners also claim that the doctrine of *in pari materia* somehow makes Department of Interior-related statutes apply to the Secretary of Agriculture. *See, e.g.*, 30 U.S.C. § 21a. We do not endorse this mix-and-match theory of statutory authority.

claim that the 2008 Decision impinges upon possessory rights in their mining claims by imposing access regulations that have "the same effect as prohibition under the guise of time consuming delay causing regulations." But the Secretary of Agriculture has long had the authority to restrict motorized access to specified areas of national forests, including to mining claims. *See Clouser*, 42 F.3d at 1530. Indeed, we recently reaffirmed that even where a miner has a federal mining right, a "prior approval requirement does not 'endanger or materially interfere with' [the miner's] mining operations and is therefore permissible under the statutory scheme." *United States v. Backlund*, 2012 WL 3089358 at * 7 (9th Cir. July 31, 2012) (quoting *Doremus*, 888 F.2d at 633).

## III.  FOREST SERVICE INTERPRETATION

[10] Anticipating the shortcomings of their challenge to the Forest Service's authority, the Miners claim that 36 C.F.R. § 228.4(a) creates an exception to the 2008 Decision.[3] Section 228.4(a)(1)(i) provides that a Notice of Intent to operate is not required for "Operations which will be limited to the use of vehicles on existing public roads or roads used and maintained for National Forest System purposes." Reasoning that the 2008 Decision does not change the "public" character of previously "public roads," the Miners posit that they need not

---

[3]The Forest Service argues that the Miners' claim—36 C.F.R. § 228.4(a) creates an exception—is not ripe for review because the roads where motor vehicles are prohibited are not "public roads." Thus, the Forest Service argues that the exception is inapplicable to the Miners. However, this circular logic, characterized by the Forest Service as a ripeness argument, presumes the correctness of the Forest Service's interpretation of what constitutes a "public road." The agency's effort to deflect the challenge as unripe is at odds with our precedent. *See Mont. Sulphur & Chem. Co. v. U.S. Environ. Prot. Agency*, 666 F.3d 1174, 1183-84 (9th Cir. 2012) (rejecting ripeness challenge before determining reasonableness of agency's interpretation of its regulation); *see also Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 708 (9th Cir. 2009) (finding ripeness in facial challenge to regulations).

seek pre-authorization for motor vehicle use on such "public" roads in the ENF.[4]

Although the concept of a "public road" may seem obvious, the definition is not immediately clear. The Forest Service urges that its 2008 Decision, which limited motor vehicle use to certain roads, rendered all other roads within the ENF "non-public" because those roads now fall outside the Forest Service Manual's definition of "public road." The Manual defines a "public road" as:

> 1. Available, except during scheduled periods, extreme weather, or emergency conditions;
>
> 2. Passable by four-wheel standard passenger cars; and
>
> 3. Open to the general public for use without restrictive gates, prohibitive signs, or regulation other than restrictions based on size, weight, or class of registration.

The Miners accuse the Forest Service of "aggressively redefining" the meaning of "public road."

[11] We give wide deference to an agency's reasonable interpretation of its own regulation. "[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.' " *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). The Forest Service's definition of "public roads"—

---

[4]In their reply brief, the Miners rely on 43 U.S.C. § 932 for support. Because the Miners did not raise this argument in their opening brief, we do not consider it. *See United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009).

roads open to motor vehicle use by the general public—is reasonable because "public" is commonly defined as "[o]pen or available for all to use, share, or enjoy." Black's Law Dictionary 1348 (9th ed. 2009).[5] Given the many restrictions placed on their use, the roads restricted by the 2008 Decision are no longer public roads. The Miners' alternative definition does not render the Forest Service's definition plainly erroneous or inconsistent with the regulation.[6]

## CONCLUSION

**[12]** The Miners had standing to bring this suit. Still, the Forest Service acted within its authority when it prohibited cross country vehicle traffic and limited motor vehicle use to certain designated roads in the ENF. The "public roads" provision in 36 C.F.R. § 228.4(a)(1) does not create an exception to the 2008 Decision because the roads on which motor vehicles were prohibited ceased to be "public roads," as reasonably defined by the Forest Service.

---

[5]Allegations that the Forest Service will unreasonably deny requests for pre-authorization are speculative and unripe. *See Park Lake Res. Ltd. Liability Co. v. U.S. Dept. of Agr.*, 197 F.3d 448, 451-52 (10th Cir. 1999) (holding that miners' challenge to the designation of land as research natural area was unripe because, inter alia, if the miners had submitted a plan of operations, the plan might have been approved despite the designation).

[6]The Miners also argue that roads "used and maintained for National Forest System purposes" include roads closed to motor vehicle use by the 2008 Decision because the closed roads continue to be both "used" and "maintained" for Forest Service System purposes. *See* 36 C.F.R. § 228.4(a)(1)(i). The Forest Service, however, determines which roads to designate for motor vehicle use based in part on whether a road needs "maintenance and administration" and whether resources are available for its maintenance and administration. *See* 36 C.F.R. § 212.55(a). As the government argues, "it is *designated* roads . . . for which 'maintenance' must be provided." The Forest Service's interpretation of section 228.4(a)(1)(i)'s reference to roads "used and maintained for National Forest System purposes" that limits it to only those roads designated for motor vehicle use is thus not plainly erroneous or inconsistent with that regulation.

**AFFIRMED.**