# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALI BASSIRI,
          *Plaintiff-Appellant,*

        v.

XEROX CORPORATION; XEROX
CORPORATION LONG-TERM
DISABILITY INCOME PLAN;
LAWRENCE BECKER,
          *Defendants-Appellees,*

       and

PATRICIA NAZEMETZ; PRUDENTIAL
COMPANY OF AMERICA; HEALTH
INTERNATIONAL; DOES 1-100
INCLUSIVE,
          *Defendants.*

No. 04-55472

D.C. No.
CV-03-03597-DT

OPINION

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Argued and Submitted
December 5, 2005—Pasadena, California

Filed September 12, 2006

Before: Harry Pregerson, John T. Noonan, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Pregerson

11099

**COUNSEL**

Kathleen A. Brewer, Westlake Village, California, for the plaintiff-appellant.

Richard J. Pautler, Thompson Colburn, LLP, St. Louis, Missouri, for the defendants-appellees.

## OPINION

PREGERSON, Circuit Judge:

The district court determined that the provisions of the Employee Retirement Income Security Act ("ERISA") apply to Xerox's Long-Term Disability Plan ("LTD Plan") because the plan pays only 60% of Appellant Ali Bassiri's usual salary. Bassiri challenges that determination. The district court certified this issue for interlocutory appeal, and we thus have jurisdiction under 28 U.S.C. § 1292(b). We reverse and remand for further proceedings.

## I. Factual Background

Ali Bassiri was a permanent employee of Xerox Corporation from 1997 to 2002. While employed at Xerox, Bassiri was eligible for short-term disability benefits, and he was enrolled in the Xerox LTD Plan and a Prudential Disability Income Plan. The three plans provided full coverage in the event of a disability: (1) for the first five months of his disability, Bassiri would be paid full salary under the Xerox short-term disability plan; (2) for the next twenty-four months, Bassiri would be paid 60% salary under the Xerox LTD Plan; and (3) any remaining disability period would be covered under the extended Prudential policy. Under the terms of the LTD plan, payments lasted only as long as the recipient was a full-time permanent employee of Xerox; they ended upon termination.

Bassiri had an excellent work record and was promoted to a management position in 2000. In September 2001, Bassiri began experiencing severe pain in his wrists and upper extremities. In January 2002, Bassiri temporarily lost use of one hand. Shortly thereafter, he was diagnosed with severe bilateral carpal tunnel syndrome, with accompanying damage to his nerves, spine, arm, wrist, and shoulder.

On January 21, 2002, Bassiri's doctor notified Xerox management that Bassiri required a leave of absence. In April 2002, Bassiri underwent surgery for carpal tunnel syndrome. When Bassiri returned to work on May 22, 2002, Xerox informed Bassiri that he would be terminated effective July 21, 2002.

Bassiri received short-term disability benefits for the first five months of his disability, from January 2002 to June 2002. From June 2002 until his termination in July 2002, Bassiri received payments under the Xerox LTD plan.

Bassiri filed a complaint against Xerox on May 21, 2003, alleging that Xerox had wrongfully terminated his employment, and that Xerox had wrongfully terminated his disability payments. Bassiri's complaint, as amended, alleged that either: (a) the Xerox LTD plan was an ERISA "employee welfare benefit plan" under section 3(1) of ERISA, codified at 29 U.S.C. § 1002(1), and he was entitled to a remedy under ERISA; or (b) the Xerox LTD plan was a "payroll practice" exempt from ERISA under 29 C.F.R. § 2510.3-1(b)(2), and he was entitled to relief under state law for breach of contract, fraud, and negligent misrepresentation.

Xerox filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Bassiri's state law claims as preempted by ERISA. On November 13, 2003, the district court held that the Xerox LTD plan was an employee welfare benefit plan governed by ERISA. The court rejected Bassiri's contention that the LTD Plan was a "payroll practice" exempted from ERISA because it concluded that the plan did not pay "normal compensation" under 29 C.F.R. § 2510.3-1(b)(2). It therefore dismissed Bassiri's state and common law claims as preempted by ERISA. On December 12, 2003, Bassiri filed a motion asking the district court to certify its decision for interlocutory review pursuant to 28 U.S.C. § 1292(b). The district court certified the order, and this appeal ensued.

## II.  Analysis

Our task in this interlocutory appeal is limited: we are asked only to decide whether Xerox's LTD plan is an employee welfare benefit plan that falls within the scope of ERISA, and if so, whether the fact that the LTD plan pays less than Bassiri's full salary precludes it from qualifying as a "payroll practice" specifically exempted from ERISA. We review de novo the district court's decision to grant a motion to dismiss for failure to state a claim, as well as its interpretation of ERISA. *See Spink v. Lockheed Corp.*, 125 F.3d 1257, 1260 (9th Cir. 1997).

**[1]** Section 3(1) of ERISA, codified at 29 U.S.C. § 1002(1), defines an employee welfare benefit plan as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, *disability*, death or unemployment . . . .

29 U.S.C. § 1002(1) (emphasis added). The Xerox LTD plan was established by Bassiri's employer, Xerox, and is maintained by a Plan Administrator who reports to Xerox. The LTD plan documents state that the purpose of the LTD plan is to "provide disability benefits for eligible employees of Xerox Corporation." Therefore, the LTD plan is clearly "established or maintained" by an employer for the purpose of providing disability benefits. We thus agree with the district court that the LTD plan falls squarely within ERISA's definition of an employee welfare benefit plan.

**[2]** The principle question before us, however, is whether Xerox's LTD Plan is a "payroll practice" exempted from ERISA's coverage under Department of Labor regulations

implementing the statute. The regulations define a payroll practice as (among other things):

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) . . . .

29 C.F.R. § 2510.3-1(b)(2). According to the preamble to the regulation, such plans are exempted from coverage under ERISA because, "although related to benefits described in [section 3(1) of ERISA], [they] are more closely associated with normal wages or salary." 40 Fed. Reg. 34256 (Aug. 15, 1975).

We must determine whether Xerox's LTD Plan, which pays 60% of one's regular salary, could constitute payment of "normal compensation." We do not begin this question with a blank slate: the Department of Labor has issued several opinion letters interpreting "normal compensation." We therefore first consider what deference, if any, we should give to the Department of Labor's opinion letters.

**[3]** Since 1979, the Department of Labor has penned eleven opinion letters defining "normal compensation" to include payments of less than full salary. Each of the eleven letters advise that the respective programs are payroll practices because they pay "not more than normal compensation." *See* Dep't of Labor, Opinion 94-40A, 1994 ERISA LEXIS 65, at *3 (Dec. 7, 1994); Dep't of Labor, Opinion 93-27A, 1993 ERISA LEXIS 29, at *6 (Oct. 12, 1993) (finding that a disability program that paid disabled employees 65% of regular salary is an exempt payroll practice; disability payments that "either equal, or represent a significant portion of, an employee's normal compensation, but in no event exceed an employ-

ee's normal compensation" are payroll practices); Dep't of Labor, Opinion 93-20A, 1993 ERISA LEXIS 20, at *4 (July 16, 1993) (holding that disability plan that paid up to 100% of regular salary was a payroll practice because payments "do not exceed the employee's normal compensation"); Dep't of Labor, Opinion 93-02A, 1993 ERISA LEXIS 2, at *4 (Jan. 12, 1993) ("It is the position of the Department that an employer's payment of less than normal compensation . . . may constitute a payroll practice that is not an employee welfare benefit plan."); Dep't of Labor, Opinion 92-18A, 1992 ERISA LEXIS 19, at *3 (Sept. 30, 1992); Dep't of Labor, Opinion 83-37A, 1983 ERISA LEXIS 23, at *5 (July 18, 1983); Dep't of Labor, Opinion 82-44A, 1982 ERISA LEXIS 24, at *4-5 (Aug. 27, 1982); Dep't of Labor, Opinion 81-71A, 1981 ERISA LEXIS 18, at *4 (Sept. 11, 1981); Dep't of Labor, Opinion 80-53A, 1980 ERISA LEXIS 24, at *3-4 (Sept. 5, 1980); Dep't of Labor, Opinion 80-44A, 1980 ERISA LEXIS 33, at *3-4 (July 22, 1980); Dep't of Labor, Opinion 79-69A, 1979 ERISA LEXIS 23, at *4 (Sept. 25, 1979). Thus, under the interpretation of the Department of Labor, payment of 60% of an employee's regular salary may constitute "normal compensation."

[4] The district court concluded that the Department of Labor's letters should be given deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), "only to the extent that they have 'the power to persuade,' " citing *Christensen v. Harris County*, 529 U.S. 576 (2000). The district court was mistaken, however, because the proper construct for review of these opinion letters is *Auer* deference, not *Skidmore* deference. In *Christensen*, the Court considered opinion letters in which the Department of Labor purported to interpret a statute, the Fair Labor Standards Act. Under *Skidmore*, an agency's interpretation of a *statute* that is not reached through the normal notice-and-comment procedure does not have the force of law and is not entitled to *Chevron* deference. *See Christensen*, 529 U.S. at 587. But where an agency interprets its own regulation, even if through an informal process, its

interpretation of an ambiguous statute is controlling under *Auer* unless "plainly erroneous or inconsistent with the regulation." *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Contrary to Xerox's assertions, the *Christensen* court did not overrule *Auer*; indeed, it cited *Auer* as the test for an agency's interpretation of an ambiguous regulation. *See Christensen*, 529 U.S. at 588; *see also Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (citing *Auer*, post-*Christensen*, for the principle that "[c]ourts grant an agency's interpretation of its own regulations considerable legal leeway"). Thus, we continue to apply *Auer* deference to an agency's interpretation of an ambiguous regulation. *See League of Wilderness Defenders/ Blue Mountains Biodiversity Project v. Forsgren*, 309 F.3d 1181, 1183 (9th Cir. 2002) (continuing to apply *Auer* after *Christensen*).[1]

Under *Auer*, as amplified by *Christensen*, the court must first determine whether the regulation was ambiguous. *See Christensen*, 529 U.S. at 588 ("*Auer* deference is warranted only when the language of the regulation is ambiguous. . . . To defer to the agency's position [where the regulation is not ambiguous] would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation.").

**[5]** In this case, the meaning of the term "normal compensation" is not entirely "free from doubt." *See Providence*

---

[1]This circuit is not alone in this conclusion. *See United States v. Johnson*, 437 F.3d 157, 178 (1st Cir. 2006); *M. Fortunoff of Westbury Corp. v. Peerless Ins. Co.,* 432 F.3d 127, 138 (2d Cir. 2005); *Rain & Hail Ins. Serv., Inc. v. Fed. Crop Ins. Corp.*, 426 F.3d 976, 979 (8th Cir. 2005); *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust Dated June 27, 2002*, 410 F.3d 304, 319 (6th Cir. 2005); *Humanoids Group v. Rogan*, 375 F.3d 301, 306 (4th Cir. 2004); *Wells Fargo Bank of Tex. NA v. James*, 321 F.3d 488, 494 (5th Cir. 2003). *But see Keys v. Barnhart*, 347 F.3d 990, 993 (7th Cir. 2003) ("Probably there is little left of *Auer*.").

*Health Sys.-Wash. v. Thompson*, 353 F.3d 661, 665 (9th Cir. 2003). "Normal" in this context can be read to refer to the amount of compensation, the source of the payment, the manner of payment, or any combination of the above. In contrast to the preceding section of the regulations, which refers to "normal *rate* of compensation," *see* 29 C.F.R. § 2510.3-1(b)(1) (emphasis added), the term "normal compensation" is left open to these various interpretations. Indeed, the fact that the district court disagrees with the Department of Labor and numerous other courts as to what "normal compensation" means, as well the sheer number of opinion letters interpreting "normal compensation," suggests that the term is ambiguous. *See Beck v. City of Cleveland*, 390 F.3d 912, 920 (6th Cir. 2004) (noting that the existence of opinion letters and differing judicial opinions reflects the ambiguity of a regulation's text).

**[6]** Because the regulation is ambiguous, the Department of Labor's interpretation is controlling under *Auer* unless it is "plainly erroneous or inconsistent with the regulation." *See Auer*, 519 U.S. at 461 (citations omitted); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-66 (1980) (holding that an agency's construction of its own regulations should be dispositive "[u]nless demonstrably irrational"). Under this standard, we defer to the agency's interpretation of its regulation unless an " 'alternative reading is *compelled* by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.' " *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)) (emphasis added).

**[7]** Here the Department of Labor's interpretation is not plainly erroneous or inconsistent with the regulation. Because "normal compensation" is a vague term, it may reasonably include reduced compensation that is "normal" in other senses of the word, as mentioned above. Also, the preamble to the regulation states that payroll practices are those which, "al-

though relating to benefits described in sections 3(1)(A) of [ERISA] and 302(c) of the LMRA, are more closely associated with normal wages or salary." 40 Fed. Reg. 34526 (Aug. 15, 1975). Xerox's LTD Plan more closely resembles salary: The payments come in regular paychecks, in an amount tied to the employee's salary and not to the variable performance of a fund. And, like salary, LTD Plan benefits end upon termination. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985) (noting that payroll practices end upon termination); *see also* Department of Labor, Opinion 96-16A, 1996 ERISA LEXIS 28, at *6 (Aug. 27, 1996) (finding that disability plan was not a "payroll practice" because, *inter alia*, the payroll practices exception is "not intended to apply to arrangements that continue cash payments to individuals . . . after the individuals have ceased to be considered employees . . . .").

**[8]** The Department of Labor's interpretation also fits with the purpose of ERISA: to protect employees from mismanagement of benefit funds. *See Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). As the Court stated in *Morash*:

> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator . . . . If there is a danger of defeated expectations [in receiving vacation benefits paid out of general assets], it is no different from the danger of defeated expectations of wages for services performed — a danger Congress chose not to regulate in ERISA.

*Id.* (internal citations omitted). The Department of Labor has chosen to define "normal compensation" broadly and focus on

the *source* of the funding, rather than its amount. This choice is in line with the purpose of the statute. *See*, *e.g.*, *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 326-27 (1997) (noting the importance of the *source* of funding as a distinguishing feature between ERISA plans and non-ERISA plans throughout Department of Labor regulations).

We are not persuaded by Xerox's argument that its plan does not fit within *Morash*'s interpretation of a payroll practice because benefits under its LTD Plan are payable "only upon the occurrence of a contingency outside of the control of the employee." *See Morash*, 490 U.S. at 116. Although benefits under the LTD Plan are available only after the employee becomes unable to work and is medically certified as disabled, these are not the kind of contingencies *Morash* had in mind. Because all sick leave and medical benefits are contingent on illness, Xerox's proposed definition would obliterate the payroll practices exception at issue here. This cannot be what the Department of Labor intended and is not required by the statute. *See Stern v. IBM*, 326 F.3d 1367, 1373 (11th Cir. 2003) (noting that such a broad definition of contingencies would make the payroll practices exception "meaningless").

Finally, Xerox points to language in the preamble suggesting that Congress intended to cover "disability plans and other medical plans under which benefits generally consist of a scheduled percentage of normal compensation." 40 Fed. Reg. 34526 (Aug. 15, 1975). The thrust of this section of the preamble is that ERISA should cover "true disability plans," namely, those "that have traditionally been regarded as employee benefit plans, rather than a continuation of wages or salary." *Id.* The parties have spilt much ink debating the definition of a "true disability" plan. We believe this is a question left to the sound discretion of the agency charged with administering ERISA, which has provided a consistent answer since 1979. When the agency has chosen a definition

that comports with the text and purposes of the governing statute and is not "decidedly irrational," it is not our place to second-guess its judgment.

If this were de novo review, we might not have arrived at the same interpretation of "normal compensation" as the Department of Labor. Nonetheless, the Department of Labor's opinion letters, as interpretations of that agency's own regulations, are entitled to "great judicial deference." *See Zurich Am. Ins. Co. v. Whittier Props., Inc.*, 356 F.3d 1132, 1137 (9th Cir. 2004). Special deference is due because "the letters reflect a consistent view over an extended period of time" — here, a position that the Department of Labor has taken uniformly since 1979. *Archuleta v. Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1186 (10th Cir. 2005). For over twenty-five years, employers have relied on this interpretation and have shaped their plans around the Department of Labor's definition. We will not upset that established definition unless compelled to do so. *See Thomas Jefferson Univ.*, 512 U.S. at 512.[2]

**[9]** Although Xerox argues to the contrary, we also conclude that adoption of the Department of Labor's longstanding interpretation does not cause the regulation to exceed the agency's authority under the statute. As the Supreme Court noted in *Morash*, "[t]he precise coverage of ERISA is not clearly set forth in the Act." 490 U.S. at 113. Rather, ERISA frequently defines terms vaguely, and leaves much to the administrative discretion of the implementing agency. *See id.*

---

[2]In deferring to the Department of Labor's opinion, we reach the same conclusion as every court that has explicitly considered whether a plan that provides less than full salary may provide "normal compensation." *See Langley v. DaimlerChrysler Corp.*, 407 F. Supp. 2d 897, 912-15 (N.D. Ohio 2005); *Havey v. Tenneco*, No. 98C 7137, 2000 WL 198445, at *8 (N.D. Ill. Feb. 11, 2000); *Hite v. Biomet, Inc.*, 38 F. Supp. 2d 720, 729-30 (N.D. Ind. 1999); *Williams v. Great Dane Trailer Tenn., Inc.*, No. 94-2189-G/A, 1995 WL 447268, at *2 (W.D. Tenn. Jan. 20, 1995); *Martin Marietta Energy Sys., Inc. v. Indus. Comm'n of Ohio*, 843 F. Supp. 1206, 1211-12 (S.D. Ohio 1994).

at 116. This is particularly true of section 3(1)'s fairly tauto-logical definition of an employee welfare benefit plan as "any plan, fund, or program . . . established or maintained by an employer . . ." for the purpose of providing various benefits. 29 U.S.C. § 1002(1). The statute "does not further define 'plan, fund, or program,' " *see Morash*, 490 U.S. at 114, but leaves ample room for the Department of Labor to provide a more helpful definition. The Department has done so, and the statute does not compel us to reject the agency's views.

   **[10]** We therefore defer to the Department of Labor's inter-pretation, and find that Xerox's LTD Plan may qualify as an exempt payroll practice under 29 C.F.R. § 2510.3-1(b)(2) even though it pays less than an employee's full salary.[3]

---

   [3]Xerox argues that its plan must be an ERISA plan because various courts have premised jurisdiction on the fact that similar disability plans that pay less than 100% of salary are ERISA plans. As its primary exam-ple, Xerox points to *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), a case in which both this court and the Supreme Court would have jurisdiction only if the disability plan, which paid 70% of salary, was an ERISA plan. *See id.*; *Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 825 (9th Cir. 2002). Xerox argues that each court has an obligation to consider its jurisdiction. Thus, because both courts exercised jurisdic-tion, Xerox asks us to conclude that both the Supreme Court and this court must have decided that its plan was a plan covered under ERISA *and* that it was not a payroll practice.

   Even assuming that the plans at issue are materially indistinguishable from the one at issue here, this argument presumes too much. A court has an obligation to consider its own jurisdiction, and should, *sua sponte*, raise any doubts it has about its jurisdiction. *See WMX Tech. Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir.1997). It cannot be presumed, however, that by exercising jurisdiction the court has considered and rejected every juris-dictional argument that a party might raise. In *Nord*, neither party argued that the plan was a payroll practice nor did they raise any question as to the jurisdiction of the court. Neither court showed any indication that it considered whether the plan was a payroll practice. Accordingly, we will not presume that the courts considered and decided, *sub silentio*, that the payroll practice exception did not apply. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("[A court] is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio.").

### III.   Conclusion

**[11]** Based on the foregoing, we hold that Xerox's LTD Plan may qualify as a payroll practice even though it pays less than Bassiri's full salary. Because the district court reached a contrary conclusion on that question, it did not consider whether the LTD Plan otherwise qualified as a payroll practice. We therefore remand the case for the district court to consider, in the first instance, whether Xerox's LTD Plan is in fact a payroll practice exempt from ERISA.

**REVERSED AND REMANDED.**