**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RODERICK LIM GO,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 11-73272<br><br>Agency No.<br>A095-617-600<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 15, 2014—San Francisco, California

Filed March 7, 2014

Before: J. Clifford Wallace and Susan P. Graber, Circuit
Judges, and Richard Mills, Senior District Judge.[*]

Opinion by Judge Wallace;
Special Concurrence by Judge Wallace

---

[*] The Honorable Richard Mills, Senior District Judge for the U.S.
District Court for the Central District of Illinois, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of an untimely motion to reopen seeking protection under the Convention Against Torture based on changed country conditions in the Philippines.

The panel rejected petitioner's contention that the specific time and number limitations on motions to reopen, set forth at 8 C.F.R. § 1003.2(c), do not apply to motions that arise under the Convention Against Torture. The panel explained that the Convention is not violated by the imposition of reasonable procedural requirements on the adjudication of a petitioner's claims.

The panel held that the Board did not abuse its discretion in concluding that petitioner failed to show that the changed circumstances exception to the bar on untimely motions to reopen applied to this case.

Specially concurring, Judge Wallace wrote separately to bring to the court's attention an intracircuit split concerning the amount of deference owed under *Auer v. Robbins*, 519 U.S. 452 (1997), to a single-member, non-precedential Board decision interpreting its own regulations.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stacy Tolchin (argued), Law Offices of Stacy Tolchin, Los Angeles, California, for Petitioner.

Stuart F. Delery, Principal Deputy Assistant Attorney General; Blair T. O'Connor, Assistant Director; Don G. Scroggin, and Matthew B. George (argued), Trial Attorneys, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

WALLACE, Senior Circuit Judge:

Roderick Lim Go petitions us to review the Board of Immigration Appeals' (Board) denial of his motion to reopen under the Convention Against Torture (CAT). Go contends that the Board erroneously applied 8 C.F.R. § 1003.2(c), the regulation governing motions to reopen, even though this regulation "makes no reference" to the CAT. Go also contends that the Board abused its discretion in concluding that certain "new evidence" presented in his motion to reopen was not material.

We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition. In a separately filed unpublished disposition, we address the petition of Grace Tan Go, which presents the same arguments as are presented here.

I.

In a previous proceeding, Go applied for asylum, withholding of removal, and protection under the CAT. After the Board denied those claims, we denied Go's petition for review in a published opinion. *See Go v. Holder*, 640 F.3d 1047 (9th Cir. 2011). Here, we briefly recapitulate the background of this case, insofar as it is pertinent to the present appeal.

As we explained in our prior opinion, Go's application for asylum and other forms of relief was predicated on his allegation that he would be "subject to a sham criminal prosecution in the Philippines if removed to that country." *Id.* at 1050. He alleged that he and his wife had been "falsely charged with kidnapping" a prominent individual in the Philippines, and that they had fled to the United States to escape prosecution and avoid being retaliated against by members of that individual's family. *Id.* With respect to the CAT, Go alleged that he "would be subject to torture if he were held in a Philippine detention facility pending his trial for kidnapping." *Id.*

An immigration judge (IJ) found that Go was ineligible for asylum and withholding of removal because of his admission that he was "involved in an illegal drug-trafficking scheme." *Id.* As to the CAT claim, the IJ concluded that Go had "failed to carry his burden of demonstrating eligibility for relief." *Id.* This conclusion was predicated on testimony from a "government witness" who had "testified that Go would not be tortured in a Philippine detention facility while awaiting trial." *Id.* In two separate orders, the Board denied Go's appeal. *Id.* The first of these orders affirmed the IJ's conclusion that Go was statutorily ineligible for asylum and

withholding of removal. *Id.* However, the CAT claim was remanded for further proceedings. *Id.* After the IJ held proceedings to address that claim more fully, the Board issued its second order, which rejected Go's claim for relief under the CAT. *Id.* at 1051. In this order, the Board considered several items of evidence that had been presented before the IJ, including: (1) the fact that "one of Go's co-defendants in the kidnapping . . . had not been tortured or otherwise mistreated"; (2) the testimony of Cezar Tajanlangit, a former prosecutor in the Philippines, "who testified that torture was uncommon in the facility where Go would be detained"; (3) the "notoriety" of the case, which made it "unlikely that an ill-intentioned officer would believe that he could abuse [Go] without being reported in the press"; and (4) a resolution issued by the Philippine Justice Department that called for dismissal of the kidnapping charges against Go. *Id.*

We denied Go's petition to review the Board's orders. As to the CAT claim, we held that "substantial evidence support[ed] the Board's conclusion that Go is not likely to be tortured upon return to the Philippines." *Id.* at 1054. We emphasized several aspects of the evidence that led to this conclusion. First, we observed that one of Go's "alleged accomplices has been detained for some time without harm or incident," and that although several of his family members had also been charged with participating in his alleged crimes, none of them had been taken into government custody, much less tortured. *Id.* at 1053. Second, we pointed out that the Philippine government had ordered that the kidnapping charges against Go be dismissed, and said that if he is "no longer subject to a criminal prosecution in the Philippines, it follows that he is unlikely to be detained, let alone tortured." *Id.* Finally, we stated that "even if the

kidnapping charges [were to] go forward," there was still additional evidence that Go was unlikely to be tortured. *Id.* at 1054. We first highlighted that Tajanlangit, the former prosecutor, had testified that torture was "not common" in the facility where Go would be detained and that the controversial nature of Go's case would "increase public scrutiny over the government's conduct." *Id.* We also considered country reports stating that Philippine officials are more likely to follow correct procedures where a criminal suspect is from "an influential position or is of a higher social status." *Id.* "Viewing the record as a whole," we upheld the Board's determination that Go was not likely to be tortured upon return to the Philippines. *Id.*

Following our decision, Go filed a motion before the Board to reopen for protection under the CAT. Go's motion to reopen was predicated upon "new and previously unavailable evidence," which Go alleged "call[ed] into question" the testimony offered by Tajanlangit before the IJ. The Board denied Go's motion to reopen as untimely, citing 8 C.F.R. § 1003.2(c) in support of this conclusion. It also held that the "additional evidence regarding [Tajanlangit] does not affect the reliability or veracity of his testimony in this proceeding," while the other "additional background evidence" submitted in connection with the motion to reopen did not "indicate that conditions are worsening or deteriorating in the Philippines in a manner material" to Go's claim.

## II.

The regulations governing motions to reopen before the Board appear at 8 C.F.R. § 1003.2. These regulations provide that a party may file only one motion to reopen, and that such

a motion "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). There are several exceptions to these limitations on a party's eligibility to file a motion to reopen, including an exception for motions to reopen "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *Id.* § 1003.2(c)(3)(ii).

Go's principal argument is that the regulations governing motions to reopen at 8 C.F.R. § 1003.2(c) do not apply to motions that arise under the CAT, insofar as the language of these regulations "makes no reference to either the [CAT] or to deferral of removal." This is an argument that we have repeatedly rejected in a series of unpublished decisions. *See, e.g.*, *Singh v. Holder*, 444 F. App'x 167, 167 (9th Cir. 2011) (rejecting the petitioner's "contention that there are no time limits for filing a motion to reopen to apply for CAT relief," and citing 8 C.F.R. § 1003.2(c)(2) in support of that conclusion); *Chen Chen v. Holder*, 388 F. App'x 608, 609 (9th Cir. 2010) (same); *Flores v. Holder*, 362 F. App'x 773, 774 (9th Cir. 2010) (same); *Lopez Hernandez v. Holder*, 339 F. App'x 781, 782 (9th Cir. 2009) (same).

That conclusion is also supported by the logic of our precedents and by holdings from our sister circuits.[1] Our

---

[1] Although the Board in this case held that § 1003.2 applies, we do not defer to that decision, because it is a "one-member, non-precedential, [Board] order" and, therefore, "does not reflect the agency's fair and considered judgment on the matter in question." *Lezama-Garcia v.*

decision in *Chen v. Mukasey*, 524 F.3d 1028 (9th Cir. 2008), is instructive. In *Chen*, we upheld a decision of the Board holding that a petitioner's motion to reopen was "time- and number-barred . . . under 8 C.F.R. § 1003.2(c)(2)." *Id.* at 1030–31. The petitioner in that case argued that her removal would violate the CAT. *Id.* at 1033. We rejected that contention, stating that the petitioner had "failed to show how [the CAT] is violated by the application of reasonable procedural requirements for the adjudication of [a petitioner's] claims." *Id.*

In support of that conclusion, we cited with approval the First Circuit's decision in *Foroglou v. Reno*, 241 F.3d 111 (1st Cir. 2001). As the First Circuit explained in *Foroglou*:

> [The petitioner's] main argument is that the Board's time limit on petitions to reopen is itself invalid because it would result in denying relief to deportees who might then suffer torture, contrary to the [CAT] and to the policies embodied in federal legislation and regulations that implement the [CAT] or otherwise protect the rights of aliens. The short answer to this argument is that [the petitioner] points to nothing in [the CAT] or legislation that precludes the United States from setting reasonable time limits on the assertion of claims under [the CAT] in connection with an ongoing proceeding or an already effective order of deportation. Even

*Holder*, 666 F.3d 518, 532 (9th Cir. 2011) (internal quotation marks and citation omitted).

> in criminal cases, constitutional and other
> rights must be asserted in a timely fashion.

*Id.* at 113.

Go's argument, in a nutshell, is that there cannot be any "regulatory limitation" on motions to reopen under the CAT. But as we concluded in *Chen*, and as the First Circuit explained in *Foroglou*, this is not the case. Rather, as we held in *Chen*, the CAT is not violated by the imposition of "reasonable procedural requirements" on the adjudication of a petitioner's claims. *Chen*, 524 F.3d at 1033. Indeed, in *Chen* we implicitly held that the specific time and number limitations on motions to reopen set forth in 8 C.F.R. § 1003.2(c)(2) could be applied to CAT claims, a holding we make explicit in this opinion. *Id.* Go points to nothing in the CAT itself, or in legislation implementing the CAT, that would preclude the Board from setting reasonable procedural requirements on motions to reopen under the CAT. *See Foroglou*, 241 F.3d at 113. Moreover, Go points to no other statute or regulation governing motions to reopen for CAT claims. Thus, if 8 C.F.R. § 1003.2(c) did *not* apply to CAT claims, there would be no mechanism for applicants under the CAT to file a motion to reopen.

Finally, although we are aware of no published opinion from another circuit that expressly holds that 8 C.F.R. § 1003.2(c) applies to CAT claims, it appears that every circuit to have considered the question has concluded that it does. *See, e.g.*, *Zheng v. Bureau of Citizenship & Immigration Servs.*, 472 F. App'x 91, 92 (2d Cir. 2012) (holding that "there is no merit to the petitioner's argument that motions to reopen seeking relief under the [CAT] are excused from the applicable time and numerical limitations");

*Thomas v. Att'y Gen. of the U.S.*, 308 F. App'x 587, 591–92 (3d Cir. 2009) (concluding that a motion to reopen brought under the CAT is governed by the time and number limitations of 8 C.F.R. § 1003.2(c)); *Sunarto v. Mukasey*, 306 F. App'x 957, 961–62 (6th Cir. 2009) (concluding that a motion to reopen that included a CAT claim was required to meet the requirements of 8 C.F.R. § 1003.2(c)); *Ding v. U.S. Att'y Gen.*, 507 F. App'x 845, 847–48 (11th Cir. 2013) (applying the timeliness limitation of 8 C.F.R. § 1003.2(c) to a motion to reopen that included a CAT claim). As we have repeatedly explained, in the immigration context the "need for national uniformity is paramount," because the power to regulate immigration is "unquestionably exclusively a federal power." *Ferreira v. Ashcroft*, 382 F.3d 1045, 1050 (9th Cir. 2004) (internal quotation marks omitted); *see also Kaganovich v. Gonzales*, 470 F.3d 894, 897–98 (9th Cir. 2006) (same). Thus, the uniformity among the circuits as to the applicability of 8 C.F.R. § 1003.2(c) to CAT claims also militates in favor of our holding.

Accordingly, we hold that the procedural requirements specified in 8 C.F.R. § 1003.2(c) apply to CAT claims.

### III.

Given that Go's motion to reopen was governed by 8 C.F.R. § 1003.2(c), and therefore untimely, the Board concluded that the motion could be granted only if it was "based on changed circumstances arising in the country of nationality" and predicated on "material" evidence of such "changed circumstances" that was "not available and could not have been discovered or presented at the previous hearing." The Board held that neither of the two types of additional evidence presented in the motion to reopen met

this description. First, the Board considered additional evidence regarding Tajanlangit, the former prosecutor from the Philippines, and concluded that this evidence did not "challenge or affect the credibility, reliability or veracity" of his testimony. Second, the Board considered "additional background evidence" about the Philippines. However, the Board concluded that this evidence did not demonstrate "worsening country conditions," insofar as the record "already contained generalized evidence suggesting a relatively high level of mistreatment and abuse" in the Philippines.

We review the Board's denial of a motion to reopen for abuse of discretion. *Bhasin v. Gonzales*, 423 F.3d 977, 983 (9th Cir. 2005). Under this standard, the Board's decision may only be reversed if it is "arbitrary, irrational, or contrary to law." *Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008) (internal quotation marks omitted). We hold that the Board did not abuse its discretion in concluding that Go's additional evidence was immaterial. First, as to Tajanlangit, Go offered evidence that he was "admonished" by a court in a case involving a disgruntled former client, as well as evidence regarding a bounced check allegedly issued by the prosecutor's office. The Board did not abuse its discretion in concluding that this evidence did not undermine the "credibility, reliability or veracity" of Tajanlangit's statements in *this* proceeding. Second, Go offered evidence showing that there is corruption and killing in the relevant area of the Philippines. The Board did not abuse its discretion in concluding that the evidence of "mistreatment and abuse" presented by Go did not constitute evidence of "worsening" country conditions, which means that this evidence was insufficient to show that the "changed

circumstances" exception to the bar on untimely motions to reopen applies to this case.

IV.

Finally, Go argues that the Board should have granted his motion to reopen *sua sponte* pursuant to 8 C.F.R. § 1003.2(a). However, we lack jurisdiction to review the Board's decision not to invoke its *sua sponte* authority to reopen proceedings. *See, e.g.*, *Sharma v. Holder*, 633 F.3d 865, 874 (9th Cir. 2011).

**PETITION FOR REVIEW DENIED in part; DISMISSED in part.**

WALLACE, Senior Circuit Judge, concurring specially:

I write separately to call attention to an unfortunate confusion in our precedents.

Our opinion makes the following assertion: "Although the Board in this case held that § 1003.2 applies, we do not defer to that decision, because it is a 'one-member, non-precedential, [Board] order' and, therefore, does not reflect the agency's fair and considered judgment on the matter in question." *Supra* at 7 n.1., *quoting Lezama-Garcia v. Holder*, 666 F.3d 518, 532 (9th Cir. 2011) (internal quotation marks and citation omitted). I accept this statement, because it correctly reflects the holding in *Lezama-Garcia*. In my view, however, *Lezama-Garcia* was wrongly decided. Worse, its erroneous interpretation of *Auer* deference has created an intracircuit split as to the type of deference owed to certain

agency pronouncements–namely, the one-member, non-precedential Board decisions at issue here.

The outcome of this case is unaffected by this confusion, insofar as Go did not raise the issue of the proper deference to be accorded to the Board's interpretation of the relevant regulation, and thus waived any argument as to the issue. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Nonetheless, I write separately to call this issue to the attention of our court.

I.

The confusion addressed in this concurrence arises from a misunderstanding of a crucial distinction in administrative law. That distinction is between the proper deference owed to an agency's interpretation of a *statute* and the proper deference owed to an agency's interpretation of its own *regulations*. The principles of *Chevron* deference apply to the former. *See, e.g.*, *Gonzalez v. Oregon*, 546 U.S. 243, 255–56 (2006), *discussing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). By contrast, the principles of *Auer* deference apply to the latter. *See, e.g.*, *id.*, *discussing Auer v. Robbins*, 519 U.S. 452 (1997); *see also Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 828–29 (9th Cir. 2012) (explaining that *Auer* stands for the "principle that agencies' interpretations of their own regulations are entitled to deference, even when their interpretation of statutes is not," whereas *Chevron* deference applies to an agency's statutory interpretations).

In this case, the issue is the Board's interpretation of its own regulations–namely, 8 C.F.R. § 1003.2. Thus, *Auer* deference should apply.

"Agencies are entitled to deference to their interpretation of their own regulations." *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005). Under our precedents,"where an agency interprets its own regulation, *even if through an informal process*, its interpretation of an ambiguous regulation is *controlling* under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006), *citing Auer*, 519 U.S. at 461 (emphases added). This is correct as a matter of administrative law. *See Auer*, 519 U.S. at 461–62 (deferring to the interpretation of a regulation presented in an *amicus* brief filed by the Department of Labor). Thus, it is unsurprising that we have followed this principle in a wide variety of contexts. *See, e.g.*, *Public Lands for the People, Inc. v. U.S. Dept. of Agric.*, 697 F.3d 1192, 1199 (9th Cir. 2012) (according "wide deference" to the Forest Service Manual's interpretation of a regulation); *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076, 1079 (9th Cir. 2011) (deferring to the interpretation of a regulation advanced in an *amicus* brief by the Department of Labor); *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 548, 554–57 (9th Cir. 2009) (deferring to the interpretation of a "mining-related directive" set forth in a "Memorandum to Regional Foresters" issued by the Forest Service); *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 n.1 (9th Cir. 2008) (deferring to an Office of Thrift Supervision legal opinion interpreting a regulation); *L.A. Closeout, Inc. v. Dep't of Homeland Sec.*, 513 F.3d 940, 941–42 (9th Cir. 2008) (deferring to an internal memorandum used by the Department of Homeland Security in interpreting a regulation). As these cases make clear, an agency's interpretation of an ambiguous regulation–no matter how informal the pronouncement in which the agency advances its

interpretation–is controlling, unless that interpretation is plainly erroneous or inconsistent with the regulation itself.

Recently, however, we misread this long line of precedent. *See Lezama-Garcia v. Holder*, 666 F.3d 518 (9th Cir. 2011). In *Lezama-Garcia*, the majority announced that a single-member, non-precedential decision of the Board "is entitled to no deference under *Auer* as an agency interpretation of a regulation." *Id.* at 532. Regrettably, *Lezama-Garcia* has since led other panels within our Circuit astray. *See Errera v. Holder*, 492 F. App'x 782, 791 (9th Cir. 2012) (Bennett, J., concurring).

The erroneous nature of this statement was correctly pointed out by the dissent in *Lezama-Garcia*. 666 F.3d at 538–39 (Rawlinson, J., dissenting) (explaining that the majority had erred, *inter alia*, by "giv[ing] absolutely no deference to the agency's interpretation of its regulation"). The refusal of the majority in *Lezama-Garcia* to accord deference, under *Auer*, to a non-precedential decision of the Board is irreconcilable with *Bassiri*, which holds that even an "informal" agency interpretation must be afforded *Auer* deference. *Bassiri*, 463 F.3d at 930.

In support of its conclusion, the majority in *Lezama-Garcia* cited a case from the Seventh Circuit, rather than considering *Bassiri* or its progeny within the Ninth Circuit. *See Lezama-Garcia*, 666 F.3d at 532, *citing Joseph v. Holder*, 579 F.3d 827, 833–35 (7th Cir. 2009). To make this already confusing situation even more confounded, the reasoning of the Seventh Circuit has been rejected by both the Second and Eighth Circuits. *Compare Joseph*, 579 F.3d at 832–33 (deciding to afford lesser deference to a non-precedential, one-member decision of the Board) *with Mansour v. Holder*,

739 F.3d 412, 414–15 (8th Cir. 2014) (holding that "[t]o the extent the [unpublished Board] decision interprets its own regulations, the interpretation is controlling unless 'plainly erroneous or inconsistent with the regulation'") *and Linares Huarcaya v. Mukasey*, 550 F.3d 224, 228–30 (2d Cir. 2008) (giving "substantial deference" under *Auer* to a non-precedential Board decision interpreting Justice Department regulations).

In any event, and regardless of the contrary misinterpretations proffered by us in *Lezama-Garcia* and by the Seventh Circuit in *Joseph*, the law of our circuit is clear: "where an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" *Bassiri*, 463 F.3d at 930.

## II.

The distinction between the type of deference owed to an agency's interpretation of a statute and that owed to its interpretation of its own regulations is critical to understanding the case on which *Lezama-Garcia* relied. In *Garcia-Quintero v. Gonzales*, 455 F.3d 1006 (9th Cir. 2006), we considered whether unpublished, non-precedential decisions of the Board should be afforded *Chevron* deference. *Id.* at 1012–13. The question of whether *Chevron* deference should be afforded to the Board's decision was appropriate, because the court in *Garcia-Quintero* was considering the Board's interpretation of "the cancellation of removal statute, 8 U.S.C. § 1229b." *Id.* at 1009. The holding of *Garcia-Quintero* was strictly that *Chevron* deference should not be afforded to unpublished, non-precedential decisions of the

Board.  *Id.* at 1014.  *Garcia-Quintero* says nothing about *Auer* deference.

*Lezama-Garcia*, which relied upon *Garcia-Quintero*, crucially failed to apprehend that the latter case was considering an agency's interpretations of a statute, and thus solely dealt with *Chevron* deference.  *Lezama-Garcia* begins by observing that *Garcia-Quintero* had held that a "single-member [Board] decision interpreting a *statutory* provision" is entitled only to deference "in proportion to [its] power to persuade."  *Lezama-Garcia*, 666 F.3d at 532.  So far, so good.  The opinion in *Lezama-Garcia* then falls into error, however, when it goes on to hold that "[f]or a similar reason, [a single-member Board decision] is entitled to no deference under *Auer* as an agency interpretation of a regulation."  *Id.*  The error, again, is in failing to recognize that *Chevron* and *Auer* deference are significantly different, and that the reasons for deferring (or not deferring) under *Chevron* are not relevantly "similar" to the reasons for deferring (or not deferring) under *Auer*.

The relevant difference between *Chevron* and *Auer* deference is well explained by Judge Berzon in her recent opinion in *Price*.  There, she discusses the distinction between "an agency's informal interpretations of its own regulations [which are entitled to *Auer* deference] and of its governing statute [which are entitled to *Chevron* deference]."  *Price*, 697 F.3d at 829.  As she explains, the "rigors of rulemaking" are pertinent to an understanding of why, in the context of an agency's statutory interpretation, courts are to apply principles of *Chevron* deference.  *Id.*  By contrast, once an agency has "undertake[n] careful deliberation about how best to effectuate statutory policies during the demanding process of promulgating regulations"–a process during which,

importantly, "agencies are held accountable to the public through the formal rulemaking process"–it makes sense to demand "[l]ess formality" of an agency's "subsequent interpretation" of its own regulations. *Id.* at 829–30. Thus, in the latter context, the principles of *Auer* deference are appropriate.

As this discussion indicates, it does not follow, from the fact that we would afford no *Chevron* deference to a single-member Board interpretation of a *statute*, that we would therefore also afford no *Auer* deference to such an interpretation of a *regulation*. *See Lezama-Garcia*, 666 F.3d at 532. If *Lezama-Garcia* had applied *Bassiri* and its progeny, this error would have been avoided.

## III.

One might try to salvage the holding in *Lezama-Garcia* by arguing that *Auer* does not mandate deference to a one-member, unpublished decision of the Board, insofar as such a decision is not legally binding on the agency itself. Such an argument, however, would be unfounded. I know of no case in which we have held that the general principles of *Auer* deference, as articulated in such cases as *Bassiri*, should not be followed if the pronouncement in which the agency articulates its interpretation of a regulation is not legally binding on that agency.

In fact, our court *has* afforded *Auer* deference to agency documents that are not legally binding on the agency that issued them. In *Public Lands for the People, Inc. v. U.S. Department of Agriculture*, 697 F.3d 1192, 1199 (9th Cir. 2012), we gave "wide deference" under *Auer* to the Forest Service Manual's interpretation of a regulation. But in

*Western Radio Services Co., Inc. v. Espy*, 79 F.3d 896 (9th Cir. 1996), we held that the Forest Service Manual does not have the force and effect of law, insofar as it is "not substantive in nature," is "not promulgated in accordance with the procedural requirements of the Administrative Procedure Act," and is not "promulgated pursuant to an independent congressional authority." *Id.* at 901. Therefore, we held that the Forest Service Manual cannot be binding on the agency that promulgated it. *Id.* at 901–02.

Thus, even though we have expressly held that the Forest Service Manual does not have the force of law and is not binding on the agency that promulgated it, our court has nonetheless given *Auer* deference to the interpretation of a regulation set forth by that Manual. *Public Lands*, 697 F.3d at 1199. Under the same logic, and under *Bassiri* and its progeny, we must give *Auer* deference to an unpublished decision by the Board, even though such a decision lacks the force of law and is not binding on the Board.

IV.

Although I agree with the outcome arrived at by our opinion, a more straightforward way to reach that outcome would have been through the principles of *Auer* deference. Those principles, as articulated by this court's precedents, teach that we should regard as "controlling" the Board's decision to address motions to reopen that present CAT claims under 8 C.F.R. § 1003.2(c). *Bassiri*, 463 F.3d at 930 (9th Cir. 2006). When considering whether to defer under *Auer*, we begin by determining whether the regulation is ambiguous. *Id.* at 931 (citation omitted). If the regulation is ambiguous, the agency's interpretation is controlling unless that interpretation is "plainly erroneous or inconsistent with

the regulation." *Id.* (citations omitted). "Under this standard, we defer to the agency's interpretation of its regulation unless an alternative reading is *compelled* by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation." *Id.* (internal quotation marks and citation omitted).

Applying this standard, we should defer to the Board's interpretation of 8 C.F.R. § 1003.2(c). First, the regulation is ambiguous. Although the regulation does not expressly refer to the CAT, there is also nothing in the language of the regulation that *precludes* applying it to CAT claims. Indeed, as our opinion observes, this court has repeatedly taken for granted that it does apply to CAT claims. Thus, the regulation is ambiguous as to this issue. Accordingly, under *Auer*, we must defer to the Board's interpretation unless an alternative interpretation is "*compelled* by the regulation's plain language" or by other indications of the Board's intent at the time the regulation was promulgated. *Id.* As discussed above, 8 C.F.R. § 1003.2(c) is silent as to CAT claims; thus, the plain language of the regulation does not compel us to reject the Board's interpretation that it applies to such claims. Nor does Go point to any indications that the Board intended for the regulation not to apply to CAT claims at the time it was promulgated. Therefore, the Board's interpretation that 8 C.F.R. § 1003.2(c) applies to CAT claims is controlling, and we should defer to that interpretation.[1]

---

[1] Go does not argue that the regulation at issue, 8 C.F.R. § 1003.2(c), is itself an improper interpretation of the Immigration and Nationality Act. In any event, such an argument would fail. *See Vega v. Holder*, 611 F.3d 1168, 1170–71 (9th Cir. 2010).

V.

In general, the "appropriate mechanism for resolving an irreconcilable conflict [between our decisions] is an en banc decision." *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc) (per curiam). However, we have also held that even where the "orderly development" of our case law "might benefit from an en banc review," it is not necessary to engage in such review if a particular case does not "compel[]" us to do so. *Vasquez v. Astrue*, 572 F.3d 586, 593 n.5 (9th Cir. 2008) (explaining that we may "avoid a choice among rules which [the] case does not require"). Here, because of Go's waiver of the issue, and because we arrive at the same result regardless of the level of deference provided to the Board's interpretation of 8 C.F.R. § 1003.2(c), this case does not require us to call for en banc review to resolve the tension between *Bassiri* and its progeny and the inconsistent view expressed in *Lezama-Garcia*. Thus, it will fall to a future panel of our court to address this confusion and correct the error of *Lezama-Garcia*.